QUINCY COLLEGE AND SEMINARY CORPORATION, etc., et al., Plaintiffs,

v.

BURLINGTON NORTHERN, INC., et al., Defendants.

No. 71 C 992.

United States District Court, N. D. Illinois, E. D.

June 21, 1971.

William J. Harte, Chicago, Ill., for plaintiffs.

John E. Robson, David P. List, James L. Marovitz and Merle L. Royce, II, Leibman, Williams, Bennett, Baird & Minow, Chicago, Ill., for defendant National Railroad Passenger Corp.

R. T. Cubbage, T. G. Schuster and R. M. Gleason, Chicago, Ill., for defendant Burlington Northern.

Keith E. Roberts, Chicago, Ill., and Gordon P. MacDougall, Washington, D. C., intervenor, M. F. Radrizzi.

Before CUMMINGS, Circuit Judge, and PERRY and DECKER, District Judges.

DECKER, District Judge.

This is an action for declaratory and injunctive relief arising out of the discontinuance by the Burlington Northern Railroad of two trains operating between Chicago, Illinois and West Quincy, Missouri.

Plaintiffs are various charitable and municipal corporations which purport to represent all citizens of Macomb and Quincy, Illinois who are affected by the termination of railway service to and from Chicago. Until recently, defendant Burlington Northern, Inc. owned and operated trains Nos. 5 and 6 between West Quincy and Chicago. The trains were terminated pursuant to a contract entered into between the Burlington Northern and defendant National Railroad Passenger Corporation ("Amtrak"). The contract was executed pursuant to the National Railroad Passenger Act of 1970, 45 U.S.C. § 501 et seq., which relieved the railroad of its responsibility under applicable law of providing intercity rail passenger service, in consideration for the payment to Amtrak of several million dollars.

On April 30, 1971, a temporary restraining order was entered, prohibiting

defendants from terminating service on their trains No. 5 and No. 6. That order was subsequently vacated on May 10, 1971, and the two trains have not been operating since. Both defendants filed motions to dismiss, but because the complaint raised constitutional objections to the Act, the motions were referred to a three-judge court. 28 U.S.C. §§ 2282, 2284.

Both counts of the complaint allege that the discontinuance of train service between West Quincy and Chicago violates the United States Constitution. The only material difference between the counts is the additional allegation in Count II that defendants conspired to violate the Constitution.

In their brief in opposition to the motions to dismiss, and at oral argument on the motion for a preliminary injunction, plaintiffs characterized Count I as alleging a cause of action for breach of § 403(a) of the Act, 45 U.S.C. § 563(a). That provision authorizes Amtrak to provide intercity rail passenger service in excess of that prescribed by the basic system, "if consistent with prudent management." However, it is clear from the face of the complaint and from the motion to convene the three-judge court that the main thrust of this action is the unconstitutionality of the Act.

 Plaintiffs' first challenge to the Act is that it attempts to regulate commerce which is solely intrastate. However, trains Nos. 5 and 6 were in fact interstate carriers, operating between West Quincy, Missouri, and Chicago, Illinois. Even if it could be said that the trains operated solely intrastate,[1] it is now too late in the day to argue that Congress is prohibited by the Commerce Clause from regulating such activity. It has been held that purely local activity may be regulated by Congress pursuant to the Commerce Clause if it exerts a substantial economic effect upon interstate commerce.

Wickard v. Filburn, 317 U.S. 111, 63 S. Ct. 82, 87 L.Ed. 122 (1942). And it is well-established that an intrastate railroad line which forms part of a larger interstate line can indeed have a substantial economic effect upon the interstate commerce carried on by that line. See Colorado v. United States, 271 U.S. 153, 164, 46 S.Ct. 452, 70 L.Ed. 878 (1926). Under the authority granted by the Commerce Clause, Congress was entirely justified in exerting control over the West Quincy-Chicago line.

 Plaintiffs next argue that the Act violates the Equal Protection Clause of the Fourteenth Amendment, by favoring train service between large metropolitan centers at the expense of smaller, rural communities. However, the Fourteenth Amendment proscribes state action, and is not applicable to the federal government. See Simpson v. United States, 342 F.2d 643, n. 1 (7th Cir. 1965); United States v. Cook, 311 F.Supp. 618, 621 (W.D.Pa.1970); cf. Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Hence, plaintiffs have no valid claim that the federal statute violates the Fourteenth Amendment.

 Plaintiffs argue that the discontinuance of service denies them substantive due process of law under the Fifth Amendment. However, substantive due process, to the extent that it is still a viable doctrine, is only violated upon a showing that the Congressional scheme has no rational basis. United States v. Carolene Products Co., 304 U. S. 141, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). The legislative history of the Act, 1970 U.S.Code Cong. and Admin. News, p. 4735 et seq., as well as its avowed Congressional purpose, 45 U.S.C. § 501, leave no doubt that the Act is a rational attempt to preserve and revitalize the gradually disappearing intercity railway passenger service. It cannot be said that the Act is a violation of substantive due process.

---

1. Plaintiffs contend that West Quincy, Missouri is little more than a whistle stop for the Burlington Northern, and that the two trains primarily serve the Illinois cities of Quincy and Macomb.

■ Plaintiffs next contend that they are denied procedural due process by not being permitted to review the basic system in any court, but only before the Secretary of Transportation. 45 U.S.C. § 522. Judicial review of final agency action will not be foreclosed unless there is a persuasive reason to believe that Congress so intended. Abbott Laboratories v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The explicit words of the statute, 45 U.S.C. § 522, that the basic system "shall not be reviewable in any court", are clearly sufficient to indicate that Congress intended no judicial review. See State of New Jersey v. United States, 168 F.Supp. 324 (D.N.J.1958), aff'd per curiam, Bergen County v. United States, 359 U.S. 27, 79 S.Ct. 607, 3 L.Ed.2d 625 (1959). Under the circumstances, no Fifth Amendment procedural due process claim has been made out.

Plaintiffs' final constitutional argument, advanced primarily at the hearing on the motion for a preliminary injunction, is that the Act works an unconstitutional delegation of legislative authority, citing Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935), and Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935). They apparently challenge the power given to Amtrak pursuant to 45 U.S.C. § 546(a), whereby rates can be set and lines can be discontinued or extended (if outside the basic system) without the constraints set by the Interstate Commerce Act.

■ The Schechter and Panama cases have been severely limited to their own facts. See Fahey v. Mallonee, 332 U.S. 245, 249, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947). Delegation of legislative power is now permitted if that power is sufficiently circumscribed by appropriate statutory standards or safeguards. See, e. g., Arizona v. California, 373 U.S. 546, 583, 83 S.Ct. 1468, 10 L.Ed.2d 542 (1963).

■ A careful reading of the Act demonstrates that sufficient standards and safeguards have been set out by Congress. For instance, under § 308, 45 U.S.C. § 548, Amtrak is required to submit to the President and Congress detailed annual reports of its operations, activities, and accomplishments. In addition, it is made subject to the same safety regulations and labor laws as other common carriers. 45 U.S.C. § 546(b). Also, rail passenger service in excess of the basic system, if implemented, must be "consistent with prudent management." 45 U.S.C. § 563(a). Finally, if Amtrak should not act consistently with the policies of the Act, the United States Attorney General is authorized to go into federal district court to obtain equitable relief. 45 U.S.C. § 547. Under all the circumstances of this case, Congress has set sufficient statutory standards and safeguards upon the power delegated to Amtrak. There has thus been no unconstitutional delegation of legislative power.

Plaintiffs' only non-constitutional challenge is that Amtrak has violated the "prudent management" standard of § 403(a) by not providing intercity rail passenger service between Chicago and West Quincy. However, plaintiffs have answered their own argument in the course of Count I of the complaint. There it is alleged that the Illinois legislature is considering the funding of lines in excess of the basic system. The Act permits any state to petition Amtrak to provide service beyond that provided by the basic system in return for the state's promise to pay a reasonable portion of any losses suffered. 45 U.S.C. § 563(b). In no case is a state to pay less than two-thirds of any loss. 45 U.S.C. § 563(c).

Nowhere in Count I is it specifically alleged that Amtrak violated § 403(a). Instead, it is alleged that Amtrak's accountants reached the conclusion that trains Nos. 5 and 6 were not profitable, and that in any case, Amtrak had decided, because of a lack of funds, to provide

no service outside the basic plan unless it was funded by the states pursuant to § 403(b) (c). This is not the same as an allegation that Amtrak had displayed a lack of "prudent management". If anything, it is indicative of the exercise of prudent management. Construing Count I most favorably to plaintiffs, it does no more than chronicle the proper avenue of relief under the Act, which is not this court, but rather the state legislature. The appropriation of funds to underwrite two-thirds of any loss suffered by trains Nos. 5 and 6, proffered to Amtrak pursuant to § 403(b), will accomplish the same result plaintiffs seek in this lawsuit.

Because of the disposition of the motions to dismiss, this court does not reach the question of whether M. F. Radrizzi, the Illinois Legislative Director of the United Transportation Union, should be given leave to intervene as a party plaintiff.

For the foregoing reasons, defendants' motion to dismiss the complaint is granted, F.R.Civ.P. rule 12(b) (6), and the cause is dismissed.