Aram K. BERBERIAN

v.

NATIONAL RAILROAD PASSENGER CORPORATION.

Civ. A. No. 81–0128.

United States District Court, D. Rhode Island.

Nov. 8, 1982.

Aram K. Berberian, Warwick, R.I., for plaintiff, Aram K. Berberian.

Timothy More, Providence, R.I., Mark Landman, Washington, D.C., for defendant, National R.R. Passenger Corp.

## MEMORANDUM DECISION AND ORDER

SELYA, District Judge.

Plaintiff, Aram K. Berberian, a veteran lawyer and inveterate litigant, appearing *pro se* (as is his wont) in this action, seeks declaratory and injunctive relief and monetary damages for putative violations of "Federal Common Law" by the defendant, National Railroad Passenger Corporation ("Amtrak"). Jurisdiction is claimed under 28 U.S.C. § 1337, which grants jurisdiction for proceedings arising under any Act of Congress regulating commerce.[1] Amtrak has moved to dismiss, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, on the basis that plaintiff fails to state a claim for which relief can be granted.

For purposes of this motion to dismiss, plaintiff's factual allegations will be taken as true. It thus appears that Amtrak operates passenger trains between East Greenwich, Rhode Island and Westerly, Rhode Island. It charges the same fare, $6.85, for passage between East Greenwich and Westerly as for passage between Westerly and Providence, Rhode Island. The average fare per mile differs, however, with passengers between East Greenwich and Westerly being charged $.22 per mile and passengers between Westerly and Providence being charged $.15 ½ per mile. Plaintiff, an occasional passenger between all three points, claims that these rate differentials are discriminatory, unreasonable and unlawful. He therefore concludes and alleges that the rate-setting practices so reflected violate Federal Common Law. It is plaintiff's position that Amtrak has taken him for a ride—in more ways than one.

Plaintiff fails to specify the "Act of Congress regulating commerce" upon which he relies.[2] Presumably, he bases his action on the Rail Passenger Service Act of 1970, 45 U.S.C. § 501, *et seq.* (the "Act"), which created Amtrak. Section 547(a) of the Act provides:

> If the Corporation [Amtrak] or any railroad engages in or adheres to any action, practice, or policy inconsistent with the policies and purposes of this chapter, obstructs or interferes with any activities authorized by this chapter, refuses, fails, or neglects to discharge its

---

1. Plaintiff also mistakenly claimed jurisdiction under 28 U.S.C. § 1391(c), but this statute relates to venue rather than to subject matter jurisdiction.

2. Oral arguments were duly noticed to be held on November 1, 1982. Plaintiff failed to appear, and the Court is constrained to conclude that the plaintiff is content to rest upon his rather meagre brief.

duties and responsibilities under this chapter, or threatens any such violation, obstruction, interference, refusal, failure, or neglect, the district court of the United States for any district in which the Corporation or other person resides or may be found shall have jurisdiction, except as otherwise prohibited by law, upon petition of the Attorney General of the United States or, in a case involving a labor agreement, upon petition of any employee affected thereby, including duly authorized employee representatives, to grant such equitable relief as may be necessary or appropriate to prevent or terminate any violation, conduct, or threat. Any discontinuance of routes, trains, or services or reduction in frequency of service, which is made by the Corporation shall not be reviewable in any court except on petition of the Attorney General of the United States.

45 U.S.C. § 547(a).

■ The Supreme Court has held that Section 547(a) precludes all private causes of action against Amtrak except for those specifically authorized therein, namely, cases involving labor agreements brought by affected employees. *National Railroad Passenger Corp. v. National Association of Railroad Passengers*, 414 U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974). The case at bar is not such a case.[3] Although the last sentence of Section 547(a), specifically barring review of the discontinuance of routes except upon petition of the Attorney General,

was added in 1981, Pub.L. 97–35, Title XI, § 1179, Aug. 13, 1981, 95 Stat. 693, nothing in the legislative history underlying this amendment indicates any congressional intention to dispute, or legislatively to alter, amend or modify, the Supreme Court's holding in *National Association of Railroad Passengers.*[4]

■ The legislative intent seems clear: the scenario authored by Congress is one in which individual court challenges to rate-setting practices play no part. It is only when the objectives of the Congress are uncertain, or the language and intendment of the statutory script open to doubt, that judicial doctoring is in order. The Court concludes, therefore, that such essentially private actions are proscribed.

■ Moreover, even if plaintiff had the right to bring a private cause of action for discriminatory rates, the Act gives Amtrak broad discretion to determine its own fare schedule. Section 546 exempts Amtrak not only from regulation by the Interstate Commerce Commission, but also from the applicability and operation of state and local laws, with respect to rates, fares and charges. 45 U.S.C. §§ 546(a)(1) and (c). Plaintiff admits as much in his complaint. Accordingly, there is no law, including "Federal Common Law," which Amtrak's fares have arguably violated.[5]

■ In his Memorandum in Opposition to Defendant's Motion to Dismiss, plaintiff

---

**3.** Section 547(a) does not refer specifically to disputes over the rates charged by Amtrak. The legislative history relied on by the Supreme Court in barring private challenges to Amtrak's discontinuance of certain trains, however, supports the same conclusion here. The Congressional committee originally considering the Act rejected a proposal which would have authorized private suits by "any person adversely affected or aggrieved thereby," in addition to employees. *National Railroad Passenger Corp. v. National Association of Railroad Passengers*, 414 U.S. at 459–60, 94 S.Ct. at 693–694, *supra, citing* Supplemental Hearings on H.R. 17849 and S. 3706 before the Subcommittee on Transportation and Aeronautics of the House Committee on Interstate and Foreign Commerce, 91st Cong., 2d Sess., ser. 91–62, pp. 85, 134 (1970).

**4.** The Senate Report simply states that the sentence was added "to enable Amtrak to make changes in its service subject only to court review upon petition of the United States Attorney General. In the past, Amtrak has been hampered in its efforts to discontinue routes by a multitude of court actions for injunctive relief." S.Rep. No. 97–139, 97th Cong., 1st Sess. 319 (1981), *reprinted in* 1981 U.S. Code Cong. & Ad. News 397, 607.

**5.** Section 546(a) of the Act gives the Interstate Commerce Commission jurisdiction to hear complaints brought by aggrieved motor carriers asserting unfair or predatory practices by Amtrak. This provision is irrelevant to the present proceedings.

contends that Sections 546(a)(1) and (c) constitute an "unconstitutional delegation of legislative power." This challenge is not raised in the complaint, but emerges at this posture of litigation for the first time; it is, as it were, the caboose bringing up the rear of plaintiff's train of thought. The cases which plaintiff relies on in making this argument, *i.e., Schechter Poultry Corp. v. United States,* 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935) and *Panama Refining Co. v. Ryan,* 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935), have long since been limited to their own facts. *Quincy College & Seminary Corp. v. Burlington Northern, Inc.,* 328 F.Supp. 808, 811 (N.D.Ill.1971), *aff'd,* 405 U.S. 906, 92 S.Ct. 939, 30 L.Ed.2d 777 (1972), *citing Fahey v. Mallonee,* 332 U.S. 245, 249, 67 S.Ct. 1552, 1553, 91 L.Ed. 2030 (1947). As the three judge district court pointed out in *Quincy College & Seminary Corp.,* in response to an argument identical to the one made by this plaintiff, delegation of legislative power is permissible if that power is sufficiently circumscribed by appropriate statutory standards. 328 F.Supp. at 811. A careful reading of the Act demonstrates that Congress has diligently performed this function and has established adequate statutory criteria and safeguards with respect to the powers delegated to Amtrak. *Id.*[6] There has been no unconstitutional delegation of power.

The Court is mindful that on a substantive motion for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the pleadings, and all of the reasonable inferences therefrom, must be construed in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Applying this standard, it nevertheless appears that plaintiff is patently on the wrong track. For the reasons set forth herein, the Court concludes that the complaint fails to state a claim upon which relief can be granted.

Consonant with the foregoing, it is hereby ORDERED:

1. The defendant's motion to dismiss is granted.

6. *See e.g.,* Section 308 of the Act requiring Amtrak to submit periodic reports to Congress and the President; Section 307 of the Act authorizing suits by the Attorney General; Section 403 of the Act requiring the application of certain criteria before Amtrak adds or discontinues routes.