Ollie L. **CORNIST**, Plaintiff-Appellant,

v.

**RICHLAND PARISH SCHOOL BOARD,** et al., Defendants-Appellees.

No. 71–2148

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Sept. 17, 1971.

* ■ Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of

New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

Wm. R. Coenen, Sr., First Asst. Dist. Atty., E. Rudolph McIntyre, Dist. Atty., Rayville, La., for Richland Parish School Board.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

AINSWORTH, Circuit Judge:

This appeal is from an order of the District Court dismissing plaintiff's complaint for lack of jurisdiction.

Appellant is a black tenured public school teacher who has taught in the Richland Parish, Louisiana school system for approximately twenty-seven years. Her complaint alleges that her termination was racially motivated in violation of 42 U.S.C. § 1983. The District Court dismissed the complaint finding that plaintiff's dismissal was based on causes other than desegregation, and that inasmuch as she had not exhausted all of her state remedies the court lacked jurisdiction. We reverse.

Appellant alleges that she holds a Master's Degree in Education and has in excess of thirty hours of graduate work. On May 22, 1970, appellant received a letter from J. L. McConathy, Superintendent of the Richland Parish School Board, expressing the Board's appreciation for the "excellent job" she performed "during this unusual school year" and requesting that she continue in their employment for the school session 1970–1971. On November 30, 1970, appellant received material from the United States Department of Health, Education and Welfare, entitled "Integration and Desegregation", containing a phonograph record explaining how to approach certain problems resulting from desegregation. She played the record to her class on the same day, using the bulletin to supplement the record. On the following day, the record was seized by a school official. Two days later plaintiff was summoned to the office of the Superintendent where she was reprimanded and told that she should be severely punished for playing the record. She was also told

Robert P. McLeod, Paul Henry Kidd, Kidd & McLeod, Monroe, La., for plaintiff-appellant.

that if it were discovered that she had ordered the record from H.E.W. she would be fired promptly. On December 9, 1970, appellant was ordered off the campus and on December 16, she was informed by the Superintendent that the School Board had voted to terminate her contract effective January 4, 1971 and that she was entitled to a hearing on the charges against her.[1] On January 15, 1971, appellant received a notice that the charges had been withdrawn and directing her to resume her teaching duties as of January 18, 1971; which she did. However, six days later appellant received another notice informing her that she was suspended from her duties and that a hearing would be conducted in the matter. The hearing was held on March 26, 1971 to consider the Superintendent's recommendation that appellant be dismissed, and on April 6, the Board voted to terminate her services.

The Louisiana statute which establishes the procedure for hearing and notice afforded tenured teachers, provides in pertinent part as follows:

"A permanent teacher shall not be removed from office except upon written and signed charges of wilful neglect of duty, or incompetency or dishonesty, or of being a member of or of contributing to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the state of Louisiana, or of advocating or in any manner performing any act toward bringing about integration of the races within the public school system or any public institution of higher learning of the state of Louisiana, and then only if found guilty after a hearing by the school board of the parish or city. * * * " LSA–R.S. 17:443.

The statute also provides that a teacher found guilty and removed from office may petition a court of competent jurisdiction for a full hearing to review the action of the board.

The District Court, by a handwritten order inscribed upon an order allowing plaintiff to file a supplementary complaint, dismissed her claim for lack of jurisdiction, noting that "her remedy is to file a suit in the State District Court" as provided by the state statute.

The only issue before us is whether under 42 U.S.C. § 1983, a person who alleges a violation of civil rights under color of state law must exhaust existing state court remedies prior to prosecuting an action in federal court. The law is well settled to the contrary. The Supreme Court said in the landmark decision Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961), in discussing the import of 42 U.S.C. § 1983, "It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." See to the same effect McNeese v. Board of Ed. for Com. Unit Sch. Dist. 187, 373 U.S. 668, 671, 83 S.Ct. 1433, 1435, 10 L.Ed.2d 622 (1963); Damico v. California, 389 U.S. 416–418, 88 S.Ct. 526, 527, 19 L.Ed.2d 647 (1967); Houghton v. Shafer, 392 U.S. 639, 640, 88 S.Ct. 2119, 2120, 20 L.Ed.2d 1319 (1968). This does not mean in every case a District Court must exercise its jurisdiction prior to the filing of a suit in a state of concurrent jurisdiction. The Supreme Court, in *McNeese*, 373 U. S. at 673, 83 S.Ct. at 1436, noted instances in which it had directed a District Court to refrain temporarily from exercising its jurisdiction "[w]here strands of local law are woven into the case that is before the federal court",

---

1. The reasons alleged for the termination of appellant's contract were:
 "1. Lack of preparation and organization for daily classroom instruction.
 "2. Inability to maintain order and control of the pupils in the classroom.

"3. Your teaching skills are below an acceptable standard required to provide a good learning environment for children."

citing, e. g., Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940); Harrison v. N.A.A.C.P., 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959). We do not consider this to be such a case nor one which involves the untangling of state law before the federal case can proceed. See *McNeese*, 373 U.S. at 674, 83 S.Ct. at 1433.

Although we express no views on the merits of the allegations and the ultimate disposition thereof, appellant's complaint clearly states a cause of action peculiarly lending itself to the invocation of federal jurisdiction. It is, as in *McNeese*, "plainly federal" both in origin and nature. 373 U.S. at 674, 83 S. Ct. at 1437. Under the circumstances the District Court should have exercised its jurisdiction.

The order is vacated and the cause remanded to the District Court.