H. L. MOORE

v.

J. C. KNOWLES, Individually, and in his official capacity as Superintendent of the Borger Independent School District, et al.

Civ. A. No. 2–901.

United States District Court,
N. D. Texas,
Amarillo Division.

Oct. 29, 1971.

As Amended Nov. 8, 1971.

Larry Watts, Houston, Tex., for plaintiff.

R. A. Wilson, Underwood, Wilson, Sutton, Heare & Berry, Amarillo, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

WOODWARD, District Judge.

The plaintiff, H. L. Moore, was an eighth grade history teacher in the Borger Independent School District and had been employed as a teacher in that district for eighteen years until he was suspended from his teaching duties on January 7, 1970. He is 62 years of age. The defendants are J. C. Knowles, Superintendent of the school district, Mrs. Louis Seliger, Frank Groce, Jack Gross, George Brain, and Jan Blackwell, who were members of the Board of Trustees of said district until Mr. Blackwell and Mr. Brain left the Board at the time of the school board elections in April of 1970. There were seven places on the Board of Trustees prior to the April,

1970 election, and there was one vacancy and one member of the Board who was not made a party to this suit.

Although plaintiff originally asked for damages in this 42 U.S.C. § 1983 suit, he has by leave of the Court dropped his claim for damages, and now asks only for equitable relief and attorney's fees, to which he says he is entitled under the following facts shown at the trial of this case before the Court on the 6th and 7th days of October, 1971, all parties being present and represented by counsel.

On January 5, 1970, one Shirley Anders, a student in the Borger Independent School District, was taken into custody by a police officer of the City of Borger on charges of violating a city curfew. During questioning, she and at least one other female student involved plaintiff's name in certain improper relationships with them, and impliedly with other female students.

On the morning of January 7, 1970, plaintiff went to his classroom and was preparing for the day's activities when the principal of the school informed him that the superintendent, J. C. Knowles, wished to see him. The principal accompanied plaintiff to the office of the superintendent and then returned to his duties while plaintiff waited in an outer office to see the superintendent. After he had waited for some time, the State District Attorney, the Chief of Police and an investigating officer of the Borger Police Department went into the superintendent's office and conferred with the superintendent. Later the plaintiff was called into this conference and was confronted with the accusations that had been made by his students.

Although plaintiff was informed that he was not under arrest, he was in the company of the officers throughout the morning, through the noon hour and into the afternoon, and during this time he was questioned and given at least two polygraph tests. After the tests he was taken to the office of the District Attorney, without having eaten a meal since early that morning, and in conference

with the District Attorney, with officers present, he was told that he should see a psychiatrist and that if he did not he would be indicted. He was told that the evidence against him was conclusive as to his guilt. During these conversations the District Attorney telephoned the principal of the school and while plaintiff was present told him that he could expect a resignation from plaintiff shortly. Plaintiff states that he was bewildered and weak from hunger, and that he had been told that if he would cooperate it would be much easier on him; therefore, apparently he did not protest this indication by the District Attorney that he would resign. Later, on Friday of the same week, plaintiff removed his effects from his schoolroom. Plaintiff has not taught his classes from January 7, 1970 until the present, and he has been effectively excluded from the classroom and from his teaching duties by the school administration—which fact was affirmed by the Board.

The Court finds that plaintiff has not to this date submitted his resignation to the Borger Independent School District, and that he did have an expectancy of reemployment.

On January 28, 1970, plaintiff was indicted by the Grand Jury of Hutchinson County, charging him with four criminal violations, including statutory rape, aggravated assault on a minor, and like offenses. These cases have not been tried and are still pending.

Plaintiff has under oath denied all of the charges against him in the indictments; and although this Court is not passing on the truth or validity of these alleged facts and charges, it is obvious that he would be acquitted if a jury believed his version of the facts. Plaintiff also testified that he has, through his attorney, requested an early trial on these charges.

All teaching personnel of the Borger Independent School District are on a year-to-year basis, and Borger has not exercised its option to comply with the continuing contract law of the State of Texas.

At 7:00 p. m. on January 13, 1970, the Board of Trustees of the school district had a meeting. Prior to the meeting, Mr. Knowles was informed by plaintiff's wife that her husband wished to appear before the Board. Mr. Knowles replied that plaintiff's matter was not on the agenda, but that if he would come by Mr. Knowles' office at 9:00 p. m. that evening he would try to arrange for them to see the Board. This was done, and apparently at the request of the plaintiff another School Board meeting was held on the following night of January 14, 1970, at which plaintiff and his attorney appeared. Also present at the January 14th meeting were the District Attorney, the Chief of Police, the polygraph operator, the Sheriff of Hutchinson County, the foreman of the Grand Jury, the County Attorney, and another of the girls who had brought the complaint. A complete transcript of both Board meetings has been introduced into evidence, but a reading of the transcript indicates that the second meeting consisted principally of arguments between counsel for the plaintiff and the District Attorney, who at that time was also attorney for the Borger Independent School District.

On January 15, 1970, the principal of the school wrote plaintiff and asked for a principal-teacher conference as provided by the rules of the Manual of Policies of the Independent School District. Such a conference was held on February 27, 1970, with lawyers for both sides present. On April 22, 1970, the principal sent his written report of the conference to the superintendent. (Plaintiff's Exhibit 6).

On February 11, 1970, the superintendent wrote Mr. Moore (Plaintiff's Exhibit 13), informing him of the decision of the Board in its meeting of February 10 that Mr. Moore would be relieved immediately, with pay, from his teaching duties pending a full investigation by the school administration and further consideration of the matter by the Board.

The defendants testified that the only reason for the actions taken against plaintiff were the four indictments—otherwise he was considered a qualified teacher.

On February 27, 1970, the superintendent wrote plaintiff that in compliance with the written policy of the school district, the renewal of his contract would not be acted upon pending resolution of the problems "with which you are acquainted." (Plaintiff's Exhibit 5).

In reply to this letter, plaintiff wrote the superintendent on March 16, 1970, (Plaintiff's Exhibit 8), stating that he wanted a hearing before the Board and requesting that he be given ten days' notice and that a copy of the notice be sent to his attorney.

Plaintiff was paid in full for his contract for the 1969–1970 year even though he did not perform teaching duties after January 7, 1970.

On April 28, 1970, the attorney for the school board wrote plaintiff's attorney enclosing a copy of the report of the meeting between the principal and plaintiff (Plaintiff's Exhibit 7), and stating further, "If I am correct in thinking that ultimately you will be seeking a Board hearing with respect to the report I now hand you, it would seem to me that that would be the time also to hear Mr. Moore with respect to the letter of February 27, 1970; but, if you have a different suggestion, I will listen to you." I do not find this letter to be sufficient to afford plaintiff an opportunity for the hearing he requested in March and as required by Ferguson v. Thomas, 430 F.2d 852 (5th Cir., 1970).

Plaintiff filed his complaint in this suit on August 26, 1970. Prior to the filing of the suit no further hearing was held by the Board and there were no conferences or correspondence between the parties. No appeal from the Board's action was taken to the Texas State Board of Education.

After the filing of this suit, the attorney for defendants wrote plaintiff's attorney on February 23, 1971, inquiring if plaintiff desired a hearing before the Board. This letter was never answered due to the pending litigation.

Plaintiff is now asking for a declaratory judgment of this Court to the effect that he was denied due process when he was suspended from his teaching duties on January 7, 1970, and further, that he was denied due process when his contract was not renewed for the 1970–1971 school year. He is asking as well for an injunction ordering his reinstatement to his teaching duties and for reasonable attorney's fees.

■ There is no requirement in this § 1983 case that the plaintiff exhaust the administrative remedies afforded by Texas laws. Cornist v. Richland Parish School Board et al., 448 F.2d 594 (5th Cir., 1971); Chisley v. Richland Parish School Board et al., 448 F.2d 1251 (5th Cir., 1971).

■ Plaintiff, although he did not have "tenure" or a contract for teaching during the 1970–1971 school year, did have a reasonable expectation of reemployment under the facts of this case. Ferguson v. Thomas, *supra*; Thaw v. Board of Public Instruction of Dade County, Florida, 432 F.2d 98 (5th Cir., 1970).

■ In deciding plaintiff's first question, whether or not he was afforded due process in the suspension from his teaching duties, this Court follows the principles of Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir., 1961). There it was stated:

"Whenever a governmental body acts so as to injure an individual, the Constitution requires that the act be consonant with due process of law. The minimum procedural requirements necessary to satisfy due process depend upon the circumstances and the interests of the parties involved."

The Court in *Dixon* quoted Mr. Justice Frankfurter in Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123,

163, 71 S.Ct. 624, 95 L.Ed. 817 (1951), as follows:

> "Whether the *ex parte* procedure to which the petitioners were subjected duly observed 'the rudiments of fair play' * * * cannot * * * be tested by mere generalities or sentiments abstractly appealing. The precise nature of the interest that has been adversely affected, the manner in which this was done, the reasons for doing it, the available alternatives to the procedure that was followed, the protection implicit in the office of the functionary whose conduct is challenged, the balance of hurt complained of and good accomplished—these are some of the considerations that must enter into the judicial judgment."

In the case before us, charges of serious misconduct were made against plaintiff and a grand jury indictment was returned based in part on polygraph tests taken both by plaintiff and by the accusing girls. Although plaintiff has very convincingly denied these acts and explained his situation from the stand, it can be easily understood that the school authorities had sufficient reason to believe that grounds existed for such accusations. Considering the nature of these charges and the Board's responsibility to the children of the Borger Independent School District, the Board had the right and authority under the circumstances to suspend plaintiff from his teaching duties. In balancing the injury to plaintiff with the duty that this school board had in these particular circumstances toward its students, and considering all the surrounding facts, the procedure followed was proper and afforded the rudiments of fair play to plaintiff. The Board also very properly continued plaintiff's pay for the remainder of the year, and plaintiff's relief for denial of due process because of his suspension from teaching duties will be denied.

Although the testimony is somewhat confusing as to the status of plaintiff's position with the school district at this time, it appears that it was the Board's intention not to take any action with respect to the renewal of plaintiff's contract until after the charges contained in the indictment had been disposed of by trial. This they expected to happen prior to the commencement of the 1970–1971 school year; but the fact is that the case has not been tried, and the Board of Trustees has not to this date taken any action one way or another on the renewal of plaintiff's contract.

The effect of this nonaction by the Board is effectively to terminate plaintiff's services with the Borger Independent School District. In this case there is no doubt but that the plaintiff had an expectation of renewal of his contract and that he had a right to notice of the charges against him and a hearing before the Board in the event that his services were to be terminated. Such notice and hearing are required by Ferguson v. Thomas, *supra*, as well as by the policies of the Borger Independent School District in the event of termination of a teacher's contract.

■ By its nonaction, the Board has not only effectively terminated plaintiff's contract without a sufficient hearing as required by the law and the policies of the Board, but has also put him in the untenable position of being unable to earn a living in his chosen profession. Certainly no other school district could be expected to employ plaintiff while his status is thus with the Borger Independent School District. The rudiments of fair play are absent here; plaintiff has not been afforded minimum due process regarding the termination of his contract, and he has thereby been damaged.

■ The Board could have afforded plaintiff a hearing as he requested, and after such hearing they could have renewed his contract or declined to renew it as the circumstances seemed to warrant. Absent such a hearing, it would still have been the prerogative of the Board to inform plaintiff that the charges against him were of such a serious nature that, in their judgment as the governing body of the school dis-

trict, he should not be allowed to perform classroom duties while such charges were pending. In this case, they could have taken the same action that was taken when the plaintiff was suspended in the spring of 1970; that is, the contract could have been renewed but the plaintiff suspended from actual classroom duties pending the final outcome of the charges contained in the indictment, and he would have been paid his salary during the 1970–71 school year. Testimony from one of the defendants indicated that this was his intention as a member of the Board, and that if plaintiff had been acquitted of the charges he would have been the first to vote to reinstate him with full back pay. However, the fact remains that plaintiff in being terminated after the 1969–70 school year has not been afforded minimum due process, and he has been denied the means of livelihood in his profession. The fact that he had ample notice of the charges against him lessens in no way the burden upon the Board to comply with the necessary procedural requirements.

It is therefore the finding of this Court that plaintiff is entitled to be paid his salary for the 1970–71 school year on the same basis as he would have been paid had his contract been renewed. Plaintiff has not asked for any relief after the 1970–71 school year.

The Court further finds that plaintiff is entitled to reasonable attorney's fees. In this regard, the Court notes the fact that Mr. Watts, attorney for plaintiff, has introduced detailed time sheets and witness testimony to support his fee estimate; however, there has been other litigation involving this same situation, in which Mr. Moore was also represented by Mr. Watts. It is inevitable that some overlapping of efforts has occurred which would make it improper to award in this one case the full amount requested.

It is therefore the finding of this Court that plaintiff is entitled to the sum of $5,000.00 in attorney's fees, which the Court finds to be reasonable in this case.

These findings having been made, the Court is faced with one other problem: the defendants' contention that no relief can be granted on plaintiff's prayer because the proper parties, i. e. the Borger Independent School District or the Board of Trustees of the Borger Independent School District, have not been made parties to this suit.

It is true that the named defendants were the five members of the Board as it was constituted in the spring of 1970, along with the superintendent, and that two of those five were replaced in the election held in April of 1970. However, Rule 25(d), F.R.C.P., provides that when a public officer is a party to an action and subsequently ceases to hold office, which is this case, the action does not abate, and his successor is automatically substituted as a party. Therefore there are now before this Court five of the seven members of the Board of Trustees.

Art. 2781, Vernon's Ann.Tex.St., provides that the Board of Trustees of any independent school district may employ a superintendent, principal, and teachers, and Art. 2780, V.A.T.S., gives the Board the exclusive power to govern and manage the schools. Therefore, the power to contract with a teacher is vested in the Board of Trustees, and the majority of said Board being parties to this suit, this Court has the power to enforce the plaintiff's prayer for equitable relief, as the Court has above found it to be due.

However, as the plaintiff has dropped his claims for compensatory and exemplary damages against the several defendants as individuals, the Court here orders that all defendants are hereby dismissed in their capacities as individuals and all relief prayed for against such parties in their individual capacities is hereby denied.

Therefore, a judgment will be entered by this Court ordering the Board of Trustees of the Borger Independent

School District to pay to the plaintiff his full salary for the year 1970–71, in an amount equal to that which he received for the preceding year plus any raises to which he was automatically entitled under the law. Further, the plaintiff in said judgment will be allowed a recovery of $5,000.00 as attorney's fees.

This Memorandum Opinion and Order shall constitute the Court's Findings of Fact and Conclusions of Law.

### ORDER AMENDING FINDINGS OF FACT

On this date the Court has taken under consideration the motion made by the plaintiff that certain amendments be filed and made of the Findings of Fact heretofore entered and filed by the Court in this cause. It appears to the Court that the following amendment of the Findings of Fact should be made:

#### I.

The Findings of Fact will be amended so as to provide that the plaintiff, H. L. Moore, had been employed as a teacher in the Borger Independent School District for sixteen years rather than eighteen years as originally found.

#### II.

Rather than as set forth in the original Findings of Fact, the Court has determined after a review of the evidence in this case, that at the school board meeting of January 14, 1970, said meeting was attended by members of the board, the school superintendent, the district attorney, Mr. Galloway, the plaintiff and his attorney Mr. Watts. Following the January 14th meeting, the members of the school board held a third meeting on the morning of January 15, 1970. Present at this meeting were the members of the school board, the school superintendent, the State district attorney, the chief of police, the polygraph operator, the sheriff of Hutchinson County, Texas, the foreman of the grand jury of said county, the county attorney, the city attorney, and the mother of one of the girls who had brought a complaint against the plaintiff. Neither plaintiff nor his attorney were informed of this meeting nor were they present. Plaintiff's Exhibits No. 9, 10, and 26 are here referred to.

Other than specifically set forth above, all requests made by the plaintiff for an amendment of the Findings of Fact or Conclusions of Law are hereby specifically denied, but the original Findings of Fact are amended to the extent above set forth.