H. L. MOORE, Plaintiff-Appellee-Cross Appellant,

v.

J. C. KNOWLES et al., Defendants-Appellants-Cross Appellees.

No. 71–3523.

United States Court of Appeals, Fifth Circuit.

Aug. 2, 1973.

R. A. Wilson, A. B. Hankins, Amarillo, Tex., for appellant.

Larry Watts, John G. Abbott, Houston, Tex., Stephen J. Pollak, Atty., Washington, D. C., for appellees.

Before WISDOM, THORNBERRY and GODBOLD, Circuit Judges.

## ON PETITION FOR REHEARING

PER CURIAM:

Upon consideration of the petition for rehearing of the appellee and cross-appellant Moore and the response of the appellants and cross-appellees Knowles, et al, we withdraw our opinion, reported at 466 F.2d 531, and issue the following opinion.

Moore, the plaintiff below, was a male teacher in the eighth grade of a Texas school system, teaching both male and female students. In early 1970, female pupils made assertions to law enforcement officers that Moore had engaged in or attempted misconduct with them of a sexual nature. Immediately school officials excluded Moore from classroom teaching. Subsequently the school board, without a proper hearing, suspended him from teaching duties, with pay, for the remainder of the 1969–70 school year. Later the board, without hearing, refused to consider renewal of Moore's contract for the 1970–71 school year.

Moore sued, claiming violation of due process because the foregoing actions had been taken without hearing. The District Court treated the first and second actions together as a suspension

with pay for the remainder of the school year, and, after balancing the considerations involved, including the nature of the charges and their seriousness, and the board's responsibilities to all pupils and their parents, concluded that there had been no violation of due process. Moore v. Knowles, 333 F.Supp. 53 (N. D.Tex.1971).

As to the refusal of the board, without a hearing, to consider renewal of Moore's contract for 1970–71, the court found this to be a violation of due process and awarded Moore back pay for 1970–71 and attorney fees. It based the entitlement to hearing on the ground that while Moore lacked tenure he had an expectancy of employment. The defendants appealed and Moore cross-appealed.

■ The exclusion of Moore from continuing to perform his teaching duties occurred on January 7, 1970, immediately after the girl students made their assertions to law enforcement officers. In a conference on January 7, attended by law enforcement officers, Moore was informed of the pupils' charges. He was not then formally suspended but was barred from continuing his classroom teaching duties. His pay continued. We agree with the analysis of the District Court that, upon balancing all the considerations involved, the board did not violate due process by forthwith, and pending further developments, directing that Moore must not continue teaching his classes. School officials, responsible for the safety of teenage students, had a range of discretion in acting to meet what reasonably could be considered as an emergency situation and to keep school going. *Cf.* Dunn v. Tyler Independent School District, 460 F.2d 137 (CA5, 1972); Ferrell v. Dallas Independent School District, 392 F.2d 697, 704 (CA5, 1968).

■ On January 28 the county grand jury indicted Moore on four charges: two separate charges of aggravated assault and battery and one of contributing to delinquency of a minor, all allegedly relating to one child; one charge of assault with intent to rape and indecent exposure, allegedly concerning another child. Beginning around January 13 Moore had begun to seek a hearing before the board. On February 11, without a proper hearing, the school board notified Moore that he was relieved from his teaching duties for the remainder of the school year, with pay, pending further investigation by the board and further consideration of the matter. For the same considerations spelled out above, plus the intervening indictments by the grand jury, we consider that the board did not err in changing Moore's status, without a hearing, from that of teacher without portfolio to suspension from teaching duties for the remainder of the year, with pay. In reaching this conclusion we consider the grand jury's actions to have special significance, which we discuss below.

We turn now to the refusal to consider renewal of Moore's contract. On February 27 the superintendent informed Moore that the renewal of his contract for 1970–71 would not be acted upon pending resolution of the "problems with which you are acquainted." In the subsequent litigation in District Court board members acknowledged that their actions concerning Moore were taken as a consequence of the outstanding indictments and that in other respects he was a qualified teacher. The court found that Moore had an expectancy of employment and that the school board's failure to give him a hearing on its refusal to renew his contract for 1970–71 was a violation of due process, and the court awarded him back pay for 1970–71 plus attorney fees. We reversed as to the failure to renew the contract for 1970–71, based on Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), in which the Supreme Court held that the mere expectancy of employment did not necessitate a hearing.

■ In his petition for rehearing Moore makes two major points. The

first is that he is entitled to a remand to afford him the opportunity to offer proof tending to show that while he lacked contractual or formal tenure he nevertheless possessed a "property" interest in his continued employment as defined by the new *Sindermann* principles. *Sindermann* was decided at the trial level on summary judgment. The Supreme Court remanded the case to afford plaintiff an opportunity to prove his claim of constructive tenure. While the present case was fully tried below, we must and do recognize that the precise focus, factual and legal, was not upon the incidents of employment and practices of the school system that might have given Moore a status sufficiently close to tenure that he would enjoy a "property" interest in future employment. Rather under the law then existing in this circuit all Moore needed to establish was the expectancy of employment that *Sindermann* was to later hold was not sufficient. We agree with plaintiff that he is entitled to his day in court under the new standards laid down by *Sindermann*. We withdraw our judgment of reversal as to back pay for 1970–71 and attorney fees, vacate the District Court judgment with respect to those matters, and remand the case for further consideration by it under the new standards of *Sindermann*. See, Johnson v. Fraley, 470 F.2d 179 (CA4, 1972).[1]

As his second point, Moore refers to Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), decided the same day as *Sindermann*, in which the Supreme Court recognized that even a teacher without tenure or formal contract is entitled to a hearing if a decision not to rehire him deprived

him of an interest in "liberty" without due process. He correctly points out that we should specifically consider the applicability of *Roth*. We now do so. In *Roth* the Supreme Court said:

> The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." [Citations.] In such a case, due process would accord an opportunity to refute the charge before University officials.

> \*　　\*　　\*　　\*　　\*　　\*

> Similarly, there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities.

408 U.S. at 573, 92 S.Ct. at 2707, 33 L. Ed.2d at 558–559. Moore contends that his case is within the "different case" to which the Supreme Court referred. Doubtless the charges of sexual misconduct would "seriously damage his standing and associations in the community"; the charge was one of immorality; his "good name, reputation, honor or integrity" were at stake; and the state action "imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities."[2]

1. Skidmore v. Shamrock Ind. School District, 464 F.2d 605 (CA5, 1972), is not contrary to our disposition. That was an appeal from the granting of a motion to dismiss predicated on failure to pursue available state administrative remedies. This court affirmed on the ground of the failure to initiate the available nonjudicial review procedure and as an additional ground noted that under the Supreme

Court's decision in *Sindermann* the complaint failed to state a claim upon which relief could be granted.

2. The District Court found that Moore was "put \* \* \* in the untenable position of being unable to earn a living in his chosen profession," and that it was unlikely any other school district would employ him.

But this case involves considerations not present in the Supreme Court's hypothetical "different case." The law enforcement machinery of the State of Texas had intervened. Undoubtedly the board's acts in first suspending Moore from teaching duties for the remainder of the year and then declining to consider his contract for renewal added to the damage to Moore's reputation, but the real "badge of infamy" flowed from the indictments and not from what the board did in reacting to them, and no action by the board could clear Moore's name. Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); Board of Regents v. Roth, 408 U.S. at 573 fn 12, 92 S.Ct. at 2707 fn 12, 33 L. Ed.2d at 558 fn 12.

■ We conclude that the action of the board in declining, without hearing, to consider renewal of Moore's contract, was not a violation of due process under *Roth.* The fact of the indictments was not in dispute. Moore had knowledge of the indictments and had notice of the board's reasons for refusing to act on his contract.[3] Implicitly, if not explicitly, the board concluded, as had the superintendent initially, that a male eighth grade teacher charged with sexual misconduct with his teen-age female pupils should not be in contact with them in the teaching process. A public employing body, having knowledge of the existence of charges such as were here made, as part of its ultimate conclusion must consider the extent to which the charges reflect the possibility of culpability. Had the board itself leveled the misconduct charges against Moore, or had it relied upon only the charges by the girl students, Moore would have been entitled to a hearing. Wilderman v. Nelson, 467 F.2d 1173 (CA8, 1972). But once the underlying charges were presented to and acted upon by the grand jury—the state body whose function is to consider evidence of crime and to determine whether there exist sufficient grounds to hold an accused for trial—the board was entitled to accept that body's probable cause determination. After the grand jury had acted, the issue for the board was not whether Moore had committed the acts charged by the girls or whether he was guilty or innocent under the indictments but whether the existence and pendency of the indictments justified his suspension and the refusal to act upon the matter of his contract renewal.

"The minimum procedural requirements necessary to satisfy due process depend upon the circumstances and the interests of the parties involved." Dixon v. Alabama State Bd. of Education, 294 F.2d 150, 155 (CA5, 1961); see also, Joint Anti-Facist Refugee Committee v. McGrath, 341 U.S. 123, 163, 71 S. Ct. 624, 644, 95 L.Ed. 817, 849 (1951) (Frankfurter, J., concurring).[4] A hearing before the board on the issue of Moore's guilt, or the issue of probable cause of guilt, would have placed the board in an unseemly position vis-a-vis the law enforcement structure of the state. The board was not the proper body to try guilt or innocence or to retry probable cause. Board findings in one direction would have injured the interests of the state, and in another direction would have damaged those of Moore.

---

3. The District Court found that the board intended not to take any action with respect to renewal of Moore's contract until after the indictments had been acted upon by trial, which they expected to happen prior to the 1970–71 school year.

4. See also those cases holding that where the government has an overriding interest, or under exigent or emergency circumstances, the government may deprive an individual of a protected interest *ex parte* and summarily if an opportunity for a hearing is furnished later. Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950); Fahey v. Mallonee, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947); Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1943); *see also,* Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113, 119 (1971); Bell v. Burson, 402 U.S. 535, 542, 91 S. Ct. 1586, 1591, 29 L.Ed.2d 90, 96 (1971).

In Paine v. Board of Regents, 355 F. Supp. 199 (W.D.Tex.1972), 474 F.2d 1397 (CA5, 1973), we affirmed on the District Court opinion the conclusions of a district judge that the regents of the University of Texas could not enforce a rule automatically suspending for two years any student placed on probation or finally convicted of use, possession or sale of a drug or narcotic, without a hearing for the student to determine if he was in fact fit to remain in the university. The rule was grounded upon the determination by the regents that the increase in use, possession and sale of drugs made it imperative that all users, possessors and sellers be separated from student bodies because they would influence other students to commit the same illegal acts. The plaintiffs in *Paine* were students who had been convicted but placed on probation by the Texas state courts. Thus the state judicial system had considered whether they were fit to return to the community and had concluded that they were fit. The evidence in the case justified the conclusion that students placed on probation by state courts were usually only possessors, and that some of the probationers exerted a positive influence against drug use and possession rather than having a detrimental effect on those around them. Thus, the presumption of the regents that every person convicted or on probation was a threat to other students was not supported by the evidence. In the present case when the board suspended Moore, and when it declined to consider renewal of his contract, the state law enforcement machinery had not taken final action with respect to the charges against him nor had it made any determination concerning his fitness to return to his former status. Until state action was completed the board was entitled to conclude that with the indictments pending Moore could not effectively perform in an eighth grade classroom, that the overriding interests of the schools, the pupils and their parents necessitated his not returning to the classroom, and that it should not act on renewal of his contract until the criminal proceedings had run their course.

■■ However, all this is not necessarily the end of the matter. The pendency of the indictments made it unnecessary for the board to conduct a hearing at that time. But the inchoate status of the Texas criminal proceedings does not determine the question of whether, under the principles of *Roth*, Moore can ever have a hearing before the board to provide him an opportunity to clear his name, if he desires it. If Moore is tried under any of the indictments and found guilty, the board need offer him no hearing—it is not required to serve as a sort of appellate tribunal for a teacher convicted in state criminal court and desirous of escaping in part the impact upon the public mind through use of an administrative hearing which might take a different view than did the criminal courts. If, however, Moore is acquitted of all the charges, or if after the expiration of a reasonable period of time the criminal charges remain undisposed of, then under *Roth* the board is obligated to offer to Moore, if he desires it, a hearing at which he has the opportunity of clearing his name. Such a hearing the board already has expressed itself as willing to offer when the criminal cases have been disposed of by trial.[5] The board would not, by conducting such a hearing, be bound to re-employ Moore and it would not be liable for back pay.

> The purpose of such . . . hearing is to provide the person an opportunity to clear his name. Once a person has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other reasons.

Board of Regents v. Roth, supra, 408 U. S. at 573, fn 12, 92 S.Ct. at 2707 fn 12, 33 L.Ed.2d at 558, fn 12.[6]

---

5. See footnote 3, supra.

6. Our conclusions as to a *Roth*-type hearing before the board are, of course, independent of the hearing which we direct be held by the District Court to determine whether under present *Sindermann* stand-

■ On grounds of res judicata the District Court dismissed as a defendant Robert Gallaway, the district attorney and counsel for the board at the time Moore was suspended. In a suit completed prior to the filing of this case and brought against Gallaway as district attorney, Moore had attempted unsuccessfully to prove that Gallaway had denied him due process. We find no reversible error in the dismissal. 1B Moore, Federal Practice, ¶ 0.410(2) (1965).

The present case was brought by Moore on August 26, 1971 against three then current members of the board and two other individuals who were members of the board at the time of Moore's suspension but who had been defeated in elections prior to institution of this suit. These five defendants were sued in their individual and official capacities. Throughout pre-trial and trial defendants contended that Moore had failed to join the board as an indispensable party. The last day of trial, after Moore voluntarily dismissed his claim for damages, Moore moved to join the board as defendant. In its opinion and order the District Court stated:

> It is true that the named defendants were the five members of the Board as it was constituted in the spring of 1970, along with the superintendent, and that two of those five were replaced in the election held in April of 1970. However, Rule 25(d), F.R.C.P., provides that when a public officer is a party to an action and subsequently ceases to hold office, which is this case, the action does not abate, and his successor is automatically substituted as a party. Therefore there are now before this Court five of the seven members of the Board of Trustees.

Rule 25(d), however, contemplates substitution during pendency of the suit. Because two defendants were no longer

members of the board when suit was filed they were not public officers and not before the court as board members.

■ The District Court, on the basis of its assumption that it properly had before it a majority of the board, dismissed all defendants in their individual capacities and entered its judgment against the board. The Texas Education Code, art. 23.26, V.T.C.A., provides that school district boards of trustees are corporate bodies which may "sue and be sued." Under Texas law and under all equitable considerations the board must be brought properly before the court or the court cannot enter or enforce a judgment against it. Whitmore v. Stilwell, 227 F.2d 187 (CA5, 1955); Thaxton v. Vaughan, 321 F.2d 474 (CA4, 1963).

■ Rule 19 and Rule 21, F.R.Civ. P., provide wide discretion for the District Court to order joinder of parties, but that joinder must be accomplished with the requirements of due process in mind. The District Court was undeniably correct in deciding that its judgment should be entered against the board, Ferguson v. Thomas, 430 F.2d 852 (CA5, 1970), but notifying and effectively joining the board in the final judgment against it was not sufficient to confer jurisdiction over the board.

■ Failure to join an indispensable party is not, however, an unyielding jurisdictional defect. 3A, Moore, Federal Practice, ¶ 19.19. In this case the board's lawyer represented the defendants; he was paid from board funds, and the board's position was effectively presented before the District Court and this court. We find no substantial prejudice at this stage of the litigation and no reason to dismiss the case for this defect. On remand the District Court should order or permit Moore to join the board as a corporate body. The procedural mechanisms we leave to the Dis-

---

ards Moore had such status in the school system that he was denied due process by the refusal without a hearing to consider renewal of his contract, and, if he did

have such status, to award appropriate back pay and attorney fees as a result of the deprivation of his property without due process.

trict Court and to Moore. See, e. g., Rule 4(d)(6), F.R.Civ.P.

Our prior opinion is withdrawn. The judgment of the District Court is affirmed in part, vacated in part, and the cause is remanded to the District Court for further proceedings not inconsistent with this opinion.