Jesse C. HARRIS

v.

The UNITED STATES.

No. 383–79C.

United States Court of Claims.

Jan. 28, 1981.

W. Thomas Parrott, III, Burke, Va., attorney of record for plaintiff Jesse C. Harris. Johnson & Vickery, Vienna, Va., of counsel.

Kathleen A. Flynn, Dept. of Justice, with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant.

Before FRIEDMAN, Chief Judge, SKELTON, Senior Judge, and KASHIWA, Judge.

## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

SKELTON, Senior Judge:

The plaintiff, Jesse C. Harris, was removed from his position as a civilian employee of the Department of the Army while working under an overseas assignment in Germany because he failed to exercise his reemployment rights to his former position in the United States in the time and manner required by law and as provided in his reemployment rights agreement that he executed before going to Germany. He sues the defendant United States here for reinstatement, back pay and other benefits, alleging among other complaints that his removal was procedurally and constitutionally defective, and that it was arbitrary, capricious or malicious and an abuse of discretion, and that the penalty was too severe. The case is before us on cross-motions for summary judgment. We hold for the defendant.

The facts in the case are set forth fairly accurately in the brief of the defendant, which we adopt with some changes and

additions, and which we supplement in the body of this opinion, as follows:

Plaintiff was employed as a communications specialist with the Department of the Army ("Army") at Fort Huachuca, Arizona, at the GS–393–12 level. On January 5, 1972, plaintiff executed a reemployment rights agreement ("agreement") as a result of which he accepted an overseas assignment, at the same grade and position, with the U.S. Army Communications-Electronics Engineering Installation Agency ("USACE-EIA") in Europe. Plaintiff was stationed in West Germany.

The agreement provided, in pertinent part, as follows:

I understand that this oversea assignment is part of the Army's rotation program and that my selection for this oversea tour of duty entitles me to reemployment rights to my former position upon completion of the initial tour of duty or upon completion of any approved extension thereof. I am aware that in the event an extension is not approved after completion of my initial tour of duty that I am expected to return to my former position in the United States.

I also understand that reemployment rights are authorized for the initial tour and approved extensions thereto for an aggregate period of not to exceed 5 years. I understand that failure to make application for the exercise of these rights upon expiration of the 5-year period may result in action directing my return to my former position. In event of my failure to comply with such directed action I understand that my reemployment rights will expire and that I will be subject to separation from the service.

A chronology of the events which occurred subsequent to the execution of the agreement is necessary for a complete understanding of this case. The pertinent events are as follows. Plaintiff's initial overseas tour of duty was for 36 months. On April 30, 1975, plaintiff executed a supplement to the agreement extending the period of reemployment rights for an additional 24 months not to exceed January 17, 1977. The supplement was subject to the same conditions as those specified in the original agreement.

On September 30, 1976, plaintiff married a Syrian National medical doctor. By letter dated December 1, 1976, plaintiff requested a 120-day delay in his scheduled January 17, 1977, return to the United States in order to obtain necessary immigration documents for his wife. In response to this request, Colonel George F. O'Brien, Commander, USACE-EIA, by letter dated December 6, 1976, advised plaintiff that a 30–day delay would be requested on plaintiff's behalf. Col. O'Brien further advised plaintiff therein that should plaintiff need additional time, as of February 1, 1977, the Army would entertain a request for it upon presentation by plaintiff of documents supporting plaintiff's efforts to obtain the visa in a timely manner.

As of February 24, 1977, plaintiff had not taken the necessary administrative steps to exercise his reemployment rights. Accordingly, by letter dated February 24, 1977, Major Albert R. Pettingill, in accordance with the agreement and supplement thereto, directed plaintiff to return to the United States and to make the necessary arrangements to exercise his reemployment rights by no later than March 7, 1977. Plaintiff was further advised therein that failure to make such arrangements within the designated time period would be construed as a refusal to accept assignment to his former position in the United States and that such action would result in a proposal to separate him from the federal service.

In response to the February 24, 1977, letter from Major Pettingill, plaintiff's counsel, in Germany, by letter dated March 2, 1977, requested an additional delay of 90 days citing the need to obtain necessary documentation for plaintiff's wife's visa. In view of plaintiff's subsequent failure to exercise his reemployment rights by March 7, 1977, the Army, by letter dated March 18, 1977, notified plaintiff of its proposal to remove him from his position.

On March 21, 1977, the Army responded to plaintiff's March 2, 1977, letter citing the

proper procedure for requesting a delay in travel. Therein, plaintiff was advised that once he accomplished the procedures outlined in the February 24, 1977, letter, his request for a further delay in travel would be considered provided he furnished justifiable reasons for the request. The plaintiff never furnished such reasons.

By letter dated April 29, 1977, Colonel O'Brien notified plaintiff of his decision to sustain the proposed removal action and advised plaintiff that the removal would be effective on May 13, 1977.

Plaintiff appealed the removal action to the United States Civil Service Commission ("Commission"). A hearing was held on December 13, 1977, before the Federal Employee Appeals Authority of the Commission ("FEAA"). On September 6, 1978, the FEAA sustained the removal action. It held that the Army had complied with all of the procedural requirements of the law as set forth in the applicable statute and Civil Service Regulations in removing plaintiff from his position, and that the Army's reason for his removal was supported by the evidence and should be sustained. The FEAA accordingly affirmed the action of the agency in removing the plaintiff from his position in the Federal Service. Plaintiff now seeks review of that adverse decision and seeks reinstatement to his former position, back pay with statutory increases, and restoration of benefits.

Generally, our authority in cases of this kind is limited to reviewing the administrative action to determine whether there has been substantial compliance with procedural requirements of applicable statutes and regulations, and whether the decision was arbitrary or capricious and supported by substantial evidence. See *Ogden v. United States*, 216 Ct.Cl. 490 (1978); *Power v. United States*, 209 Ct.Cl. 126, 531 F.2d 505 (1976); *Wathen v. United States*, 208 Ct.Cl. 342, 527 F.2d 1191 (1975).

The plaintiff contends that the Army did not comply with Department of the Army Civilian Personnel Regulation (DACPR) 352.8(8–6)(a) and (b) in denying him a further extension to exercise his reemployment rights. He says that this Regulation requires the Army to give full consideration to the reasons plaintiff gave for his requested extension and that it failed to do so. He argues further that the special personal circumstances in his life, if considered, made the requested extension mandatory because of the provisions of the cited regulation. We do not agree. DACPR 352.8(8–6)(a) and (b) provide in pertinent part as follows:

(a) Extension for 5 years or less. It is the responsibility of the major oversea commander to make the determination that extension beyond the existing tour is in the best interest of the Department. Such determination should be made at least 6 months in advance of the completion date of the employee's existing tour. However, in the case of employees serving in a 12 months' tour of duty area who are not eligible for special placement assistance as discussed in paragraph 8–8b, determination may be postponed for an additional period of not to exceed 3 months. If an employee who has (or will have) satisfactorily completed his existing oversea tour elects to exercise his reemployment rights, his application must be honored even though the oversea activity may desire the employee to remain in the area for an additional tour. *Although the personal desires of the employee to remain in the oversea area must be given full consideration when authorizing an extension, the need of the oversea activity is the primary factor in arriving at a decision. However the needs of the former employing activity in the United States will be given full consideration in making the final determination.*

(b) Extension beyond 5 years. An employee serving in a foreign area . . . *will be required to exercise his reemployment rights within 5 years unless a further extension is granted.*

(1) Subject to the prior approval requirement set forth in paragraph 8–4b, reemployment rights may be extended for an additional specified period of not more than 1, 2, or 3 years beyond the 5-year period when—

(a) A suitable replacement has not been located and time will be required to train a replacement;

(b) Special personal circumstances, such as imminent retirement, make it inadvisable to require the employee or [sic] return; or

(c) Special work circumstances make it desirable that the employee be retained for an additional specific period . . . (emphasis added).

There is nothing in this regulation that gave the plaintiff an absolute right to a further extension. The regulation is clearly for the benefit of the Army and not solely for the benefit of the serviceman as plaintiff contends.

The record shows that contrary to plaintiff's claims every consideration was given by the Army to plaintiff and to his reasons for wanting a further extension. Col. O'Brien and Major Pettingill so testified. The facts show that all correspondence between them and the plaintiff was considered by them along with the evidence of conversations with him. The facts considered showed, among other things, that at first the plaintiff gave as a reason for wanting an extension beyond January 17, 1977, the end of his tour of duty, the fact that he was told by the United States consulate that he would need a police certificate of good character for his wife from both Syria and Russia, and also a medical educational certificate from Russia, in order for his wife to travel with him to the United States. Upon this representation, an extension of 30 days to February 17, 1977, was granted to him. Col. O'Brien advised the plaintiff that if he needed more time as of February 1, 1977, to obtain a visa for his wife, the Army would entertain a request for it upon plaintiff's submitting documents supporting his efforts to get the visa in a timely manner. The burden was on the plaintiff to submit proof of his efforts to get the visa and also evidence that the United States consulate or embassy had refused to grant a visa for his wife. He wholly failed to sustain this burden. It became apparent to the Army officials that the plaintiff was not having trouble getting a visa for his wife, but was having trouble getting the educational and good conduct certificates which would be necessary for her to practice medicine in the United States or to attend a graduate medical school in this country. In fact, the plaintiff stated in December, 1976, that he had secured all of the documentation necessary for his wife's visa, and that the only personal matters that he sought to have cleared up before returning to the United States was the obtaining of the necessary documentation relating to his wife's medical profession. Of course, the lack of these papers would not have prevented plaintiff's wife from going to the United States with him.

Finally, the facts show that as of February 24, 1977, the plaintiff had not submitted evidence as to his efforts to obtain a visa for his wife that would justify a further extension, and had not taken the necessary steps to exercise his reemployment rights. On that date Major Pettingill by letter directed the plaintiff in accordance with the agreement to return to the United States and to make the necessary arrangements to exercise his reemployment rights and obtain travel orders by no later than March 7, 1977. He was further advised that his failure to do so would be construed as a refusal to accept his former position in the United States and that such inaction would result in a proposal to separate him from the service. The plaintiff did nothing to comply with this directive. He had counsel write Major Pettingill a letter dated March 2, 1977, requesting more time to get a visa for his wife. This request was refused by Col. O'Brien by letter of March 21, 1977, in which plaintiff was told that if he applied to exercise his reemployment rights and obtained his travel orders "your request for further delayed travel will be considered, provided you furnish the justifiable reasons for the request." Thus, it appears that the Army was making every effort to cooperate with the plaintiff. On the other hand, the plaintiff did nothing but ask for another extension.

The Regulations show the proper way to exercise reemployment rights. DACPR 352.8(8–8)(a) and (c) provide:

8–8 EXERCISE OF REEMPLOYMENT RIGHTS

Basic requirements. Exercise of reemployment rights is contingent upon the filing of a timely application and satisfactory completion of the initial oversea tour and any approved extension thereof.

\* \* \* \* \* \*

c. Application. Formal application to exercise reemployment rights must be submitted by the employee not later than 30 calendar days after the completion date of the period for which such rights were granted. If, however, the employee departs the oversea command immediately upon completion of the prescribed tour, he has 30 calendar days after the date he reenters the United States in which to make formal application to exercise reemployment rights.

(1) Application for exercise of reemployment rights will be made by submission of a letter, accompanied by a completed Personal Qualifications Statement (Standard Form 171) and DD Forms 556 executed in accordance with CPR S1.1 and indicating that the employee has (or will have) satisfactorily completed the prescribed oversea tour (d below), through the headquarters of the appropriate oversea command to the former employing activity in the United States.

It is undisputed that the plaintiff never filed the application to exercise his reemployment rights as required by the above Regulations.

The Regulations are equally clear on the procedure to be followed by the Army in case a civilian employee fails to timely file such an application after his tour of duty has expired. Paragraph 352.8(8–7)(c) provides:

c. Expiration of rights. In all instances where reemployment rights will not be extended (para 8–6), the oversea appointing officer will provide the employee with advance written notification of the date by which he must file applica-

tion to exercise his existing rights. In addition to other pertinent information, this notice will contain advice indicating that *failure to make timely application to exercise reemployment rights will result in the employee being directed to return to his former position in the United States (para 8–11) and that refusal to comply will result in his being separated from the service.* (Emphasis supplied).

Paragraph 8–11 of such Regulations states:

8–11. DIRECTED RETURN TO UNITED STATES

When, following receipt of notice of expiration of reemployment rights (para 8–7c), an employee serving in a foreign area (para 8–1c)(1) fails or refuses to make application to exercise those rights, the oversea employing activity will initiate action to direct the individual's return to the United States.

It is clear that the plaintiff wholly failed to comply with these Regulations, and that, on the other hand, the officials followed the proper course in ordering plaintiff to return to the United States or be separated from the service. When the plaintiff failed to file the necessary application and refused to return to the United States, the Army properly removed him from the service.

The FEAA found the foregoing facts to be true, and held that the agency complied with all of the procedural requirements of the law and Civil Service regulations in removing plaintiff from the service. It held further that the agency made reasonable efforts to accommodate the plaintiff and was not abusive in exercising its discretion and was not arbitrary, capricious or unreasonable in removing him from his position. It concluded further that plaintiff's removal was justified, was supported by substantial evidence, and that the penalty was appropriate. The removal action was affirmed.

■ We conclude from our review of the decision of the FEAA that it is supported by substantial evidence, is not arbitrary or capricious, and complies with the applicable

laws and regulations and should be affirmed.

■ The plaintiff contends further that the Army travel requirement violated 10 U.S.C. § 1586(b)(3), which provides in pertinent part:

(b) Notwithstanding any other provision of law, the Secretary of Defense with respect to civilian employees of the Department of Defense other than employees of a military department, and the Secretary of each military department with respect to civilian employees of such military department, may, under such regulations as each such Secretary may prescribe with respect to the employees concerned and in accordance with the policy and other provisions of this section, establish and operate programs of rotation which provide for the granting of the right to return to a position in the United States to each civilian employee in the department concerned—

(1) who, while serving under a career-conditional or career appointment in the competitive civil service is assigned at the request of the department concerned to duty outside the United States,

(2) who satisfactorily completes such duty, and

(3) who applies, not later than thirty days after his completion of such duty, for the right to return to a position in the United States as provided by subsection (c) of this section . . . .

The argument of plaintiff is without merit. The statute authorizes the Secretary of Defense and the various military departments to promulgate regulations providing for the rotation of civilian employees serving overseas so that they may return to positions in the United States after completing their tours of duty abroad. The Army's regulations (DACPR352.8) were written pursuant to and in accordance with this statutory authority. The plaintiff also complains that DACPR352.8 is ambiguous and that it is outside the scope and intent of the statute and conflicts with it and is invalid. We do not agree. We hold that the regulation is consistent with the language and intent of the statute and is a valid guideline for the rotation of overseas civilian employees from their posts abroad to positions in the United States.

The plaintiff contends, also, that he was denied the right to respond to the proposal to remove him pursuant to 5 C.F.R. 752.-202(b) which provides:

(b) *Employee's answer.* Except as provided in paragraph (c) of this section, an employee is entitled to a reasonable time for answering a notice of proposed adverse action and for furnishing affidavits in support of his answer. The time to be allowed depends on the facts and circumstances of the case, and shall be sufficient to afford the employee ample opportunity to review the material relied on by the agency to support the reasons in the notice and to prepare an answer and secure affidavits. The agency shall provide the employee a reasonable amount of official time for these purposes if he is otherwise in an active duty status. If the employee answers, the agency shall consider his answer in reaching its decision. The employee is entitled to answer personally, or in writing, or both personally and in writing. The right to answer personally includes the right to answer orally in person by being given a reasonable opportunity to make any representations which the employee believes might sway the final decision on his case, but does not include the right to a trial or formal hearing with examination of witnesses. When the employee requests an opportunity to answer personally, the agency shall make a representative or representatives available to hear his answer. The representative or representatives designated to hear the answer shall be persons who have authority either to make a final decision on the proposed adverse action or to recommend what final decision should be made.

This argument is also without merit. The record shows and the FEAA found that the reasons for plaintiff's removal were set forth with sufficient specificity and detail to enable plaintiff to reply to them and that

he did in fact so reply in writing. His reply was fully considered by the Army. It is clear that the plaintiff exercised his rights pursuant to 5 C.F.R. 752 at every step of the proceeding.

Next, the plaintiff claims that he should prevail because of the doctrine of estoppel. This issue was not raised before the FEAA and cannot be raised here for the first time. *See Pine v. United States*, 170 Ct.Cl. 146, 371 F.2d 466 (1967); and *Grover v. United States*, 200 Ct.Cl. 337 (1973). Furthermore, the claim is without merit because the necessary elements of estoppel against the United States have not been proven.

The plaintiff also says that the penalty of removal imposed upon him is too severe. The FEAA held that his removal was an action such as to promote the efficiency of the service and was not arbitrary, capricious or unreasonable. We agree. It is well established that whether to remove an employee is a matter to be decided by the agency, and that such agency has the discretion to determine what penalty to be imposed on an employee for violating the rules. Furthermore, a court will not substitute its judgments for that of an agency with respect to the severity of an imposed penalty. *See Wathen v. United States*, 208 Ct.Cl. 342, 527 F.2d 1191 (1975); *Kandall v. United States*, 186 Ct.Cl. 900, *cert. denied*, 396 U.S. 837, 90 S.Ct. 98, 24 L.Ed.2d 89 (1969); *Keim v. United States*, 177 U.S. 290, 20 S.Ct. 574, 44 L.Ed. 774 (1900); *Birnholz v. United States*, 199 Ct.Cl. 532 (1972); *Cook v. United States*, 164 Ct.Cl. 438 (1964); *Lawyer v. United States*, 147 Ct.Cl. 501 (1959), *cert. denied*, 362 U.S. 977, 80 S.Ct. 1065, 4 L.Ed.2d 1014 (1960); *Liotta v. United States*, 174 Ct.Cl. 91 (1966).

Finally, the plaintiff asserts that he was deprived of his property rights in his job by the Army without due process of law. The plaintiff cannot prevail on this issue because the regulations cited above provide that an agency cannot take an adverse action against an employee except for such cause as will promote the efficiency of the service. 7 C.F.R. § 752.104(a). Also,

they specify that the employee be given a 30-day notice of a proposed adverse action, including the reasons therefor, a reasonable time to answer, a copy of the agency's decision as soon as possible, and a right to appeal to the Civil Service Commission (7 C.F.R. 752.202 through 752.203). This procedure was upheld by the Supreme Court in *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1973). In that case the plurality of the Court held that where the statute and regulations provided that an employee could not be separated except for such cause as would promote the efficiency of the service they "did not create an expectancy of job retention in those employees requiring procedural protection under the Due Process Clause beyond that afforded here by the statute and related agency regulations." 416 U.S. at 163, 94 S.Ct. at 1648. In the instant case, the plaintiff was accordingly afforded all of the due process required by the statute and the regulations, and, consequently, he has not been deprived of property rights in violation of the Constitution. He was given the benefits of an overseas tour of duty in the first place by reason of the statute and the regulations, and he will not now be heard to complain that the same statute and regulations were invalid and unconstitutional and deprived him of his job property rights in violation of the Constitution when he was separated from the service by reason of his violation of their provisions. This is especially true since he was given all the procedural protection "afforded by the statute and related agency regulations" under which he obtained his overseas assignment.

In *Arnett v. Kennedy, supra*, the plurality opinion also stated:

The Court has previously viewed skeptically the action of a litigant in challenging the constitutionality of portions of a statute under which it has simultaneously claimed benefits. In *Fahey v. Mallonee*, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947); it was observed:

\*    \*    \*    \*    \*    \*

"It is an elementary rule of constitutional law that one may not 'retain the benefits of an Act while attacking the constitutionality of one of its important conditions.' *United States v. San Francisco,* 310 U.S. 16, 29, 60 S.Ct. 749 [,756] 84 L.Ed. 1050. As formulated by Mr. Justice Brandeis, concurring in *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 348, 56 S.Ct. 466 [, 483], 80 L.Ed. 688. 'The Court will not pass upon the constitutionality of a statute at the instance of one who has availed himself of its benefits.'" Id., [332 U.S.] at 255 [67 S.Ct. at 1556], 91 L.Ed. 2030.

This doctrine has unquestionably been applied unevenly in the past, and observed as often as not in the breach. We believe that at the very least it gives added weight to our conclusion that where the grant of a substantive right is inextricably intertwined with the limitations on the procedures which are to be employed in determining that right, a litigant in the position of appellee must take the bitter with the sweet.

416 U.S. at 152–154, 94 S.Ct. at 1643–1644.

The above quoted portion of the court in that case is squarely in point in the case before us.

We hold that the decision of the FEAA affirming the separation of the plaintiff from the service by the Army was not arbitrary, capricious or erroneous as a matter of law, and that it was supported by substantial evidence and that it should be, and it is hereby, approved and affirmed.

The motion for summary judgment of the defendant is granted and that of the plaintiff is denied, and plaintiff's petition is dismissed.