FAHEY, FEDERAL HOME LOAN BANK COMMIS-
SIONER, ET AL. *v.* MALLONEE ET AL.

No. 687.   Argued April 30, 1947.—Decided June 23, 1947.

*Oscar H. Davis* argued the cause for appellants. With him on the brief were *Acting Solicitor General Washington, Assistant Attorney General Sonnett, Robert L. Stern, Paul A. Sweeney, Kenneth G. Heisler, Ray E. Dougherty* and *Mose Silverman.*

*Wyckoff Westover* argued the cause for Mallonee et al., appellees. With him on the brief was *Daniel W. O'Donohue, Jr.*

*Charles K. Chapman* argued the cause and filed a brief for the Long Beach Federal Savings & Loan Association, appellee.

By special leave of Court, *Everett W. Mattoon,* Deputy Attorney General, argued the cause for the State of California, as *amicus curiae,* urging affirmance. With him on the brief was *Fred N. Howser,* Attorney General.

*Louis W. Myers, Pierce Works* and *Richard Fitzpatrick* submitted on brief for the Federal Home Loan Bank of Los Angeles, appellee.

*Robert H. Wallis* and *Raymond Tremaine* submitted on brief for Wallis, appellee.

*Harry O. Wallace* submitted on brief for the Title Service Company, appellee.

Mr. Justice Jackson delivered the opinion of the Court.

A specially constituted three-judge District Court has summarily, without trial, entered final judgment ousting a Conservator who, on orders of the Federal Home Loan Bank Commissioner, had taken possession of the Long Beach Federal Savings and Loan Association. It granted this and other relief on the principal ground that § 5 (d) of the Home Owners' Loan Act of 1933, as amended, violates Article I, §§ 1 and 8 of the Constitution.

The Federal Home Loan Bank Administration on May 20, 1946, without notice or hearing, appointed Ammann conservator for the Association and he at once entered into possession. The grounds assigned were that the Association was conducting its affairs in an unlawful, unauthorized and unsafe manner, that its management was unfit and unsafe, that it was pursuing a course injurious to, and jeopardizing the interests of, its members, creditors and the public. Plaintiffs at once commenced this class action in the right of the Association against the Conservator and Fahey, Chairman of the Federal Home Loan Bank Board, the Association as a nominal defendant, and several others not important to the issue here. The complaint alleged that the Conservator and the Chairman had seized the property without due process of law, motivated by malice and ill will, and that the seizure for various reasons was in

violation of the Constitution. It asked return of the Association to its former management, permanent injunction against further interference, and other relief. Other parties in interest intervened. Temporary restraining orders issued and a three-judge court was duly convened.

Personal service was secured upon Ammann, the Conservator, but Fahey, the Federal Home Loan Bank Commissioner, officially an inhabitant of the District of Columbia, could not be served in California. A motion for substituted service, therefore, was granted and process was served upon him in the District of Columbia. It was believed that this was authorized by Judicial Code, § 57, 28 U. S. C. § 118. Ammann moved to dismiss the complaint on the ground that it failed to state a cause of action. Fahey appeared specially to move dismissal or quashing return of service on him upon the ground that he could not, in his official capacity, be sued in California and had not been served properly with process. Neither had answered the complaint, nor had their time to do so expired, when final judgment was granted against them.

The three-judge court set a variety of pending motions for argument and, after argument mainly on the constitutionality of § 5 (d), with only pleadings and motion papers before it, held the section unconstitutional, ordered removal of the Conservator, permanently enjoined the authorities from holding an administrative hearing on the matter, permanently enjoined an apprehended merger, restored the institution to its former management, ordered the Conservator to account and enjoined these authorities "from ever asserting any claims, right, title or interest" in or to the Association's property. 68 F. Supp. 418. The case is here on direct appeal. 50 Stat. 752–53, 28 U. S. C. §§ 349a, 380a.

It is manifest that whatever merit there may be in various subsidiary and collateral questions, this drastic decree can stand only if the section, as applied here, is unconstitutional.

Its defect is said to consist of delegation of legislative functions to the supervising authority without adequate standards of action or guides to policy. Section 5 (d) of the Act gives to the Board "full power to provide in the rules and regulations herein authorized for the reorganization, consolidation, merger, or liquidation of such associations, including the power to appoint a conservator or a receiver to take charge of the affairs of any such association, and to require an equitable readjustment of the capital structure of the same; and to release any such association from such control and permit its further operation." 48 Stat. 133, 12 U. S. C. § 1464 (d). This, the District Court held, was unconstitutional delegation of the congressional function. It relied on *Panama Refining Co.* v. *Ryan,* 293 U. S. 388, and *Schechter Corp.* v. *United States,* 295 U. S. 495.

Both cited cases dealt with delegation of a power to make federal crimes of acts that never had been such before and to devise novel rules of law in a field in which there had been no settled law or custom. The latter case also involved delegation to private groups as well as to public authorities. Chief Justice Hughes emphasized these features, saying that the Act under examination was not merely to deal with practices "which offend against existing law, and could be the subject of judicial condemnation without further legislation, or to create administrative machinery for the application of established principles of law to particular instances of violation. Rather, the purpose is clearly disclosed to authorize new and controlling prohibitions through codes of laws which would embrace what the formulators would propose, and what the President would approve, or prescribe, as wise and beneficent measures for the government of trades and industries in order to bring about their rehabilitation, correction and development, according to the general declaration of policy in section one." *Schechter Corp.* v. *United States,* 295 U. S. 495, 535.

The savings and loan associations with which § 5 (d) deals, on the other hand, are created, insured and aided by the Federal Government. It may be that explicit standards in the Home Owners' Loan Act would have been a desirable assurance of responsible administration. But the provisions of the statute under attack are not penal provisions as in the case of *Lanzetta* v. *New Jersey,* 306 U. S. 451, or *United States* v. *Cohen Grocery Co.,* 255 U. S. 81. The provisions are regulatory. They do not deal with unprecedented economic problems of varied industries. They deal with a single type of enterprise and with the problems of insecurity and mismanagement which are as old as banking enterprise. The remedies which are authorized are not new ones unknown to existing law to be invented by the Board in exercise of a lawless range of power. Banking is one of the longest regulated and most closely supervised of public callings. It is one in which accumulated experience of supervisors, acting for many states under various statutes, has established well-defined practices for the appointment of conservators, receivers and liquidators. Corporate management is a field, too, in which courts have experience and many precedents have crystallized into well-known and generally acceptable standards. A discretion to make regulations to guide supervisory action in such matters may be constitutionally permissible while it might not be allowable to authorize creation of new crimes in uncharted fields.

The Board adopted rules and regulations governing appointment of conservators. They provided the grounds upon which a conservator might be named,[1] and they

---

[1] The Rules and Regulations for the Federal Savings and Loan System provide in part as follows:

PART 206. APPOINTMENT OF CONSERVATOR OR RECEIVER.

§ 206.1. *Receiver or conservator; appointment.* (a) Whenever, in the opinion of the Federal Home Loan Bank Administration, any Federal savings and loan association:

Footnote 1.—Continued.

(1) Is conducting its business in an unlawful, unauthorized, or unsafe manner;

(2) Is in an unsound or unsafe condition, or has a management which is unsafe or unfit to manage a Federal savings and loan association;

(3) Cannot with safety continue in business;

(4) Is impaired in that its assets do not have an aggregate value (in the judgment of the Federal Home Loan Bank Administration) at least equal to the aggregate amount of its liabilities to its creditors, members, and all other persons;

(5) Is in imminent danger of becoming impaired;

(6) Is pursuing a course that is jeopardizing or injurious to the interests of its members, creditors, or the public;

(7) Has suspended payment of its obligations;

(8) Has refused to submit its books, papers, records, or affairs for inspection to any examiner or lawful agent appointed by the Federal Home Loan Bank Administration;

(9) Has refused by the refusal of any of its officers, directors, or employees to be examined upon oath by the Federal Home Loan Bank Administration or its representative concerning its affairs; or

(10) Has refused or failed to observe a lawful order of the Federal Home Loan Bank Administration,

the Federal Home Loan Bank Administration may appoint the Federal Savings and Loan Insurance Corporation receiver for such Federal association, which appointment shall be for the purpose of liquidation, or the Federal Home Loan Bank Administration may appoint a conservator for such Federal association to conserve the assets of the association pending further disposition of its affairs. The appointment shall be by order, which order shall state on which of the above causes the appointment is based. Any conservator so appointed shall furnish bond for himself and his employees, in form and amount and with surety acceptable to the Governor of the Federal Home Loan Bank System, or any Deputy or Assistant Governor, but no bond shall be required of the Federal Savings and Loan Insurance Corporation as receiver. The conservator or receiver shall forthwith upon appointment take possession of the association and, at the time such conservator or receiver shall demand possession, such conservator or receiver shall notify the officer or employee of the association, if any, who shall be in the home office of the association and appear to be in charge of such office, of the action of the Federal Home Loan Bank Administration. The Secretary of the Federal

Home Loan Bank Administration shall, forthwith upon adoption thereof, mail a certified copy of the order of appointment to the address of the association as it shall appear on the records of the Federal Home Loan Bank Administration and to each director of the association, known by the Secretary to be such, at the last address of each as the same shall appear on the records of the Federal Home Loan Bank Administration. If such certified copy of the order appointing the conservator or receiver is received at the offices of the association after the taking of possession by the conservator or receiver, such conservator or receiver shall hand the same to any officer or director of the association who may make demand therefor.

§ 206.2. *Hearing on appointment.* Within fourteen days (Sundays and holidays included) after the appointment of a conservator or receiver for a Federal association not at the time of such appointment in the hands of a conservator, such Federal association, which has not, by its board of directors, consented to or requested the appointment of a conservator or receiver, may file an answer and serve a written demand for a hearing, authorized by its board of directors, which demand shall state the address to which notice of hearing shall be sent. Upon receipt of such answer and written demand for a hearing the Federal Home Loan Bank Administration shall issue and serve a notice of hearing upon the institution by mailing a copy of the order of hearing to the address stated in the demand therefor and shall conduct a hearing, at which time and place the Federal association may appear and show cause why the conservator or receiver should not have been appointed and why an order should be entered by the Federal Home Loan Bank Administration discharging the conservator or receiver. Such hearing shall be held either in the district of the Federal Home Loan Bank of which such Federal association is a member or in Washington, D. C., as the Federal Home Loan Bank Administration shall determine, unless the association otherwise consents in writing. Such hearing may be held before the Federal Home Loan Bank Commissioner or before a trial examiner or hearing officer, as the Federal Home Loan Bank Administration shall determine. Such Federal association, which has not, by its board of directors, consented to or requested the appointment of a conservator or receiver, may, within seven days (Sundays and holidays included) of such appointment, serve a written or telegraphic demand, authorized by its board of directors, upon the Federal Home Loan Bank Administration for a more definite statement of the cause or causes for the action. The time of service upon the

are the usual and conventional grounds found in most state and federal banking statutes.[2] They are sufficiently explicit, against the background of custom, to be adequate for proper administration and for judicial review if there should be a proper occasion for it.

It is complained that these regulations provide for hearing after the conservator takes possession instead of before. This is a drastic procedure. But the delicate nature of the institution and the impossibility of preserving credit during an investigation has made it an almost invariable custom to apply supervisory authority in this summary manner. It is a heavy responsibility to be exercised

Federal Home Loan Bank Administration for the purposes of this section shall be the time of receipt by the Secretary of the Federal Home Loan Bank Administration.

§ 206.4. *Discharge of conservator or receiver.* An order of the Federal Home Loan Bank Administration discharging a conservator and returning the association to its management shall restore to such Federal association all its rights, powers and privileges and shall restore the rights, powers and privileges of its officers and directors, all as of the time specified in such order, except as such order may otherwise provide. An order of the Federal Home Loan Bank Administration discharging a receiver and returning the association to its management shall by operation of law and without any conveyance or other instrument, act or deed, restore to such Federal association all its rights, powers and privileges, revest in such Federal association the title to all its property, and restore the rights, powers and privileges of its officers and directors, all as of the time specified in such order, except as such order may otherwise provide. 24 C. F. R. Cum. Supp. § 206.1 *et seq.*, as amended, 24 C. F. R. 1943 Supp. § 206.1.

[2] Bank Conservation Act of March 9, 1933, § 203, 48 Stat. 2–3, 12 U. S. C. § 203; Banking Act of 1933, § 31, 48 Stat. 194, 12 U. S. C. § 71a; National Housing Act, § 406, 48 Stat. 1259–60, 12 U. S. C. § 1729. *E. g.*, New York Banking Law, § 606, 4 McKinney's Consolidated Laws of New York, pp. 708–709, (pocket part, 1946) 125–26; Page's Ohio General Code Ann., § 687; 1 Deering's California General Laws, Act 986, § 13.11; Massachusetts Laws Ann. c. 167, § 22; c. 170B, § 4; Jones Illinois Stat. Ann., § 14.40.

with disinterestedness and restraint, but in the light of the history and customs of banking we cannot say it is unconstitutional.[3]

In this case an administrative hearing was demanded and specifications were asked as to the charges against the management of the Association. The hearing was granted and a statement of complaints against the management was furnished.

The causes for the appointment of a conservator as therein set forth by the Board included withdrawals by the president without proper voucher therefor; payment of salaries and fees not commensurate with services rendered; a director's unlawful removal of a cashier's check in the amount of $50,000 during an examination by Federal Home Loan Bank examiners; leasing properties of the Association for a twenty-year period on terms which would not provide adequate consideration to the Association; use of the Association for personal gain of one or more officers and directors; failure to maintain proper accounts and to make proper reports; and falsification of records. It also charged certain manipulations of the affairs of another institution by the president of this institution.

The plaintiffs nevertheless demanded and obtained an injunction to prevent the administrative hearing and they have therefore cut off the making of a record as to whether these charges are well-founded. Nor did the trial court take evidence on the subject. We must assume that the supervising authorities would be able to sustain the statements of fact and to justify the conclusions in their charges for the purpose of determining the case without trial. We are therefore unable to agree with the court below that the section is invalid and hence that regardless of the charges the management was free to go on undisciplined and unchecked.

---

[3] See note 2.

But even if the section were defective, which we think it is not in a constitutional sense, another obstacle stands in the way of ousting this conservator.

The Long Beach Federal Savings and Loan Association was organized in 1934 under § 5 of the Home Owners' Loan Act of 1933, subsection (d) of which is now sought to be declared unconstitutional. The present management obtained a charter which provided that the Association "shall at all times be subject to the provisions of the Home Owners' Loan Act of 1933, providing for Federal savings and loan associations, and to any amendments thereof, and to any valid rules and regulations made thereunder as the same may be amended from time to time," and that it might be "liquidated, merged, consolidated, or reorganized, as is provided in the rules and regulations for Federal savings and loan associations . . . ." In 1937, upon the Association's request, an amended charter was issued which likewise provided that the Association was to exercise its powers subject to the Home Owners' Loan Act and regulations issued thereunder.

This is a stockholder's derivative action in which plaintiffs sue only in the right of the Association. It is an elementary rule of constitutional law that one may not "retain the benefits of the Act while attacking the constitutionality of one of its important conditions." *United States* v. *San Francisco*, 310 U. S. 16, 29. As formulated by Mr. Justice Brandeis, concurring in *Ashwander* v. *Tennessee Valley Authority*, 297 U. S. 288, 348, "The Court will not pass upon the constitutionality of a statute at the instance of one who has availed himself of its benefits."

In the name and right of the Association it is now being asked that the Act under which it has its existence be struck down in important particulars, hardly severable from those provisions which grant its right to exist. Plaintiffs challenge the constitutional validity of the only

provision under which proceedings may be taken to liqui-
date or conserve the Association for the protection of its
members and the public. If it can hold the charter that
it obtained under this Act and strike down the provision
for terminating its powers or conserving its assets, it may
perpetually go on, notwithstanding any abuses which its
management may perpetrate. It would be intolerable
that the Congress should endow an association with the
right to conduct a public banking business on certain
limitations and that the Court at the behest of those who
took advantage from the privilege should remove the
limitations intended for public protection. It would
be difficult to imagine a more appropriate situation in
which to apply the doctrine that one who utilizes an Act
to gain advantages of corporate existence is estopped from
questioning the validity of its vital conditions. We hold
that plaintiffs are estopped, as the Association would be,
from challenging the provisions of the Act which au-
thorize the Board to prescribe the terms and conditions
upon which a conservator may be named.

There are other important and difficult questions raised
in the case which it becomes unnecessary to decide.

Objection is made to the administrative hearing upon
the ground that it is before the same authority which has
preferred the charges and that it cannot be expected, there-
fore, to be fair and impartial and that the Act does not
provide for judicial review of the Board's determination
on the hearing. We cannot agree that courts should as-
sume in advance that an administrative hearing may not
be fairly conducted. We do not now decide whether the
determination of the Board in such proceeding is subject
to any manner of judicial review. The absence from the
statute of a provision for court review has sometimes been
held not to foreclose review. *Stark* v. *Wickard,* 321 U. S.
288; *Federal Reserve Board* v. *Agnew,* 329 U. S. 441; Ad-
ministrative Procedure Act, 5 U. S. C. A. § 1009. Nor do
we mean to be understood that if supervising authorities

maliciously, wantonly and without cause destroy the credit of a financial institution, there are not remedies.

One of the allegations of the complaint is that it was intended that this institution would be merged with other institutions to the injury of its shareholders. The allega- tion seems to be based on the fact that a different institution with which the management of the Long Beach institution was connected was merged by the authorities in a way that was highly objectionable to some of the shareholders and aroused concern of the public authorities. We find no explicit threat to merge the Long Beach institution and there is no such finding by the court below. The Government has assured us at the bar that there is no plan for such a merger in contemplation. Nevertheless, such a merger was enjoined. In view of the absence of a finding of the threat or of evidence to sustain one, we accept the Government's assurance that merger will not follow and, hence, we do not consider it necessary to discuss the legality of hypothetical mergers.

Since the judgment that has been rendered against the Conservator, who was duly served with process, must be reversed, we find it unnecessary to decide whether Fahey was an indispensable party or was properly brought into the case by substituted service.

It is obvious that there is more to this litigation than meets the eye on the pleadings. The plaintiffs' charges that ill will and malice actuated the supervising authorities, as well as the charges of the defendants that the institution has been mismanaged and that the management is unfit, are alike undetermined by the courts below, and we make no determination or intimation concerning the merits of these issues or as to other remedies or relief than that in the judgment before us.

Our decision is that it was error in the court below to hold the section unconstitutional, to oust the Conservator or to enjoin any of his proceedings or to enjoin the admin-

istrative hearing, and this without prejudice to any other administrative or judicial proceedings which may be warranted by law. The judgment is

*Reversed.*

Mr. Justice Douglas concurs in the result.

Mr. Justice Rutledge concurs in the result and in the Court's opinion insofar as it rests upon the ground that the controlling statute, § 5 (d) of the Home Owners' Loan Act of 1933, is not unconstitutional.