**GOLDEN PACIFIC BANCORP
and Miles P. Jennings, Jr.,
Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 91–1242C.

United States Claims Court.

April 28, 1992.

Jethro M. Eisenstein, New York City, for plaintiffs.

Allen D. Bruns, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## ORDER

### MOODY R. TIDWELL, III, Judge:

This case is before the court on defendant's motion to dismiss for lack of subject-matter jurisdiction, or in the alternative, for summary judgment. For the reasons set forth below, the court grants defendant's motion to dismiss.

## FACTS

Golden Pacific National Bank (Bank) is a national bank, chartered pursuant to 12 U.S.C. § 27 (1988), with its principal place of business in New York. Plaintiffs are Golden Pacific Bancorp (Golden Pacific), which owns approximately 90 percent of Bank's stock, and Miles P. Jennings who owns 6,400 shares of Golden Pacific stock.

On June 17, 1985, acting on an informant's tip, the Comptroller of the Currency undertook a surprise investigation of the Bank. The Comptroller found that the Bank had issued certificates of deposit which were not recorded on the Bank's books, nor made available to bank examiners during routine examinations. The certificates were known, because of their color, as "Yellow CDs," and were treated as standard certificates of deposit. They bore the Bank's name, stated a fixed interest rate and maturity date, and were consistently honored upon demand or maturity. Bank officials treated the Yellow CDs as investments, but the Comptroller determined them to be deposits, and thus liabilities of the Bank. As liabilities, offsetting assets were required to be maintained by

the Bank, or it would be technically insolvent. Although Bank officials claimed that the Bank held assets sufficient to offset the Yellow CDs, the Comptroller was not satisfied that such assets existed and determined that the Bank was engaged in "unsafe and unsound banking practices." The Comptroller began preparing a cease-and-desist order directing the Bank to stop the sale of Yellow CDs, but before the order could issue, news of a run on the Bank caused the Comptroller to declare the Bank insolvent and place it in receivership.

Plaintiffs filed suit in the United States District Court for the District of Columbia, seeking a review of the Comptroller's actions under the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A) (1988), and requesting damages under the Federal Torts Claim Act (FTCA), 28 U.S.C. §§ 1346, 2680(a) (1988), and the Fifth Amendment. The District Court granted summary judgment for defendant on the FTCA claim, *Golden Pac. Bancorp v. Clarke*, No. 85–2384 (D.D.C. Feb. 7, 1986), and on the APA claim, *Golden Pac. Bancorp v. Clarke*, No. 85–2384 (D.D.C. Dec. 1, 1986), but did not decide the Fifth Amendment claim. On appeal, the District Court's decisions were affirmed by the United States Court of Appeals for the District of Columbia. *Golden Pac. Bancorp v. Clarke*, 837 F.2d 509 (D.C.Cir.), *cert. denied*, 488 U.S. 890, 109 S.Ct. 223, 102 L.Ed.2d 213 (1988). The Court of Appeals did not address the takings issue since plaintiffs did not timely raise that issue.

On June 21, 1991, plaintiffs filed a complaint in this court, alleging that the actions of the Comptroller constituted a taking under the Fifth Amendment, a breach of an implied contract between the Comptroller and the Bank and its shareholders, and a mistake of fact.[1]

## DISCUSSION

The Fifth Amendment guarantees that "private property [shall not] be taken for public use without just compensation."

---

1. During oral argument on April 7, 1992, plaintiffs abandoned their implied-contract and mis-    take-of-fact claims.

U.S. Const. amend. V. This right was "designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960). No "set formula" has been developed to determine when "economic injuries caused by public action [should] be compensated by the government, rather than remain disproportionately concentrated on a few persons." *Penn. Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). However, courts have engaged in "ad hoc, factual inquiries that have identified several factors—such as the economic impact of the regulation, its interference with reasonable investment backed [*sic*] expectations, and the character of the governmental action—that have particular significance." *Kaiser Aetna v. United States*, 444 U.S. 164, 175, 100 S.Ct. 383, 390, 62 L.Ed.2d 332 (1979). In the present case, only the result of the Comptroller's actions has been challenged—not their propriety.[2] Specifically, plaintiffs argued that the "closure and destruction of a solvent bank" constituted a taking under the Fifth Amendment. The court disagrees.

■ "Banking is one of the longest regulated and most closely supervised of public callings." *Fahey v. Mallonee*, 332 U.S. 245, 250, 67 S.Ct. 1552, 1554, 91 L.Ed. 2030 (1947). "[F]ederal agencies such as the Office of the Comptroller of the Currency ... are charged with the task of overseeing [our national] banking system for the protection of the public and the national economy as a whole, and not for the benefit or protection of individual banking institutions." *First Nat'l Bank of Scotia v. United States*, 530 F.Supp. 162, 166 (D.D.C.1982). Pursuant to the regulatory scheme created by Congress, the Comptroller is authorized to issue cease-and-desist orders, impose civil money penalties, or remove officers or directors pursuant to statutory procedures whenever a bank refuses to obey the law, or persists in unsafe and unsound banking practices. 12 U.S.C. § 1818 (1988). If the Comptroller becomes "satisfied of the insolvency of a national banking association, he may, after due examination of its affairs ... appoint a receiver, who shall proceed to close up such association." 12 U.S.C. § 191 (1988).

■ Plaintiffs voluntarily chose to invest in the Bank. In essence, they were "on reasonable notice as to what the 'rules of the game' were, or reasonably could be, in the highly regulated banking industry." *American Continental Corp. v. United States*, 22 Cl.Ct. 692, 698 (1991). The actions of the Comptroller simply enforced "portions of an extensive regulatory scheme designed to promote the public interest in a sound banking system." *Id.* at 696. Although the court recognizes that extensive regulation of property may constitute a taking, *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922), plaintiffs in this case lacked "one of the most essential sticks in the bundle of rights that are commonly characterized as property—the right to exclude others." *Kaiser*, 444 U.S. at 176, 179–80, 100 S.Ct. at 392–93; *accord Nollan v. California Coastal Comm'n*, 483 U.S. 825, 831, 107 S.Ct. 3141, 3145, 97 L.Ed.2d 677 (1987); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005, 104 S.Ct. 2862, 2874, 81 L.Ed.2d 815 (1984); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 433, 102 S.Ct. 3164, 3174, 73 L.Ed.2d 868 (1982). At those times when the government could legally inspect the Bank or place it into receivership, plaintiffs were unable to exclude the government from their property. *See California Hous. Sec. v. United States*, 959 F.2d 955, 958–59 (Fed.Cir.1992). Without the right to exclude others, plaintiffs do not have the "historically rooted expectation of compensation" necessary to establish a fifth

---

2. The discretion of the Comptroller can not be challenged in this forum; such an allegation would sound in tort, and therefore be outside this court's Tucker Act jurisdiction. *Sharp v. United States*, 566 F.2d 1190, 215 Ct.Cl. 883 (1977); *see* 28 U.S.C. § 1491(a) (1988). Though plaintiffs admitted that the Comptroller had the authority to take the actions he did, they also argued that they were entitled to just compensation.

amendment taking. *California Hous. Sec.* at 958.

Contrary to their arguments, all the significant factors identified in *Kaiser* weigh against plaintiffs' case. First, the "governmental action" by the Comptroller is most properly characterized as promoting "the public interest in a sound banking system." *American Continental*, 22 Cl.Ct. at 696. Second, plaintiff's reasonable investment-backed expectations could not possibly have been interfered with given the highly regulated nature of the banking industry which pre-existed their investment. *Id.* at 697. Third, the economic impact of the regulation is slight since the Comptroller only acted to preserve the integrity of the Bank after its officials had engaged in "unsafe and unsound" business practices—a benefit to the Bank's shareholders. The only actions taken were those that plaintiffs should have reasonably expected as investors in the banking industry, and the court finds no taking to have occurred.[3]

## CONCLUSION

For the reasons stated, the court finds that the actions of the Comptroller did not constitute a taking under the Fifth Amendment. Accordingly, the court lacks subject-matter jurisdiction and defendant's motion to dismiss is granted. The Clerk of the court is directed to dismiss the complaint without prejudice. No costs.

IT IS SO ORDERED.

---

**3.** Since the court finds the fifth amendment issue to be dispositive, it need not address defendant's arguments regarding plaintiffs' standing to sue in this court, or res judicata.