Harold A. HOFFMAN, Appellant,

v.

STATE of Alaska, DEPARTMENT OF COMMERCE AND ECONOMIC DEVELOPMENT, Appellee.

No. S–4621.

Supreme Court of Alaska.

May 29, 1992.

Phillip Paul Weidner, Weidner and Associates, Anchorage, for appellant.

Gary I. Amendola, Sarah J. Felix, Asst. Attys. Gen., Juneau, Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

### I. INTRODUCTION AND FACTS

The present case has its genesis in the State's 1988 takeover and closure of the Alaska Continental Bank (ACB). Appellant Harold Hoffman was a stockholder, a director, and president of ACB. After the State seized ACB on July 7, 1988, Hoffman applied to the State's Banking and Securities Division of the Department of Commerce and Economic Development (Division) for an order vacating possession pursuant to AS 06.05.470(d).[1]

---

**1.** AS 06.05.470(d) provides in relevant part:
If ... an emergency exists which will result in serious losses to the depositors, [the department] may take possession of a bank without prior hearing.... [A]ny interested party may file with [the department] an application for an order vacating the possession. The department shall grant the application if it finds that its action was unauthorized under this chapter.

Pursuant to AS 06.05.470(z), the State transferred possession of ACB to the FDIC on August 3, 1988, without notice to Hoffman. On the same day, in an ex parte proceeding, the superior court authorized the sale of ACB's assets by the FDIC to First Interstate Bank of Alaska.

After the FDIC sold ACB's assets, the State moved to dismiss Hoffman's application. The Division granted the motion. The Division's hearing officer reasoned that the only remedy available under AS 06.05.470(d) was the return of possession of ACB. Since that remedy was unavailable, the hearing officer dismissed Hoffman's application as moot.

Hoffman appealed the Division's decision to the superior court arguing that it deprived him of due process of law and that his application was not moot. The superior court affirmed the Division's dismissal. Hoffman appeals. We affirm.

## II. DISCUSSION

Hoffman argues that he was denied due process of law because he was denied a hearing on whether the State lawfully seized ACB. The State argues that due process does not require a hearing and that, in any case, Hoffman waived his right to a hearing by postponing scheduled hearing dates.

Alaska's constitution provides: "No person shall be deprived of life, liberty, or property, without due process of law. The right of all persons to fair and just treatment in the course of legislative and executive investigations shall not be infringed." Alaska Const. art. I, § 7.

 We have consistently held that, except in emergencies, due process requires the State to afford a person an opportunity for a hearing *before* the State deprives that person of a protected proper-ty interest. *Graham v. State,* 633 P.2d 211, 216 (Alaska 1981). Even when emergencies allow the State to seize property before a hearing, due process requires the State to provide an opportunity for a post-seizure hearing at a meaningful time to minimize possible injury. *F/V American Eagle v. State,* 620 P.2d 657, 666–67 (Alaska 1980). While the drastic consequences of a bank failure may often place them among the emergencies in which the State may postpone a hearing until after a seizure,[2] in the present case, the State seized the assets and three weeks later transferred them without notice and while a hearing was pending. The failure to give notice of the transfer makes it difficult for the State to argue that it afforded Hoffman an opportunity for a post-seizure hearing at a time when it was still possible to minimize the potential injury which may have resulted from the seizure. On the record before us the State has not presented any justification for its precipitate transfer of the assets to the FDIC.

At this point we would normally remand to the Division for a hearing on Hoffman's substantive claim. However, in the present case, there is no need for a hearing because Hoffman's substantive claim is barred by collateral estoppel.

 Hoffman's substantive claim is that the State's seizure of ACB was unauthorized.[3] Alaska Statute 06.05.470(a)(2) empowers the State to take possession of a bank if, among other things, "the bank's business is being conducted in an unlawful or unsound manner." In a related action between Hoffman and the FDIC, the United States Court of Appeals for the Ninth Circuit held that Hoffman's self-dealing with ACB constituted "an unsafe or unsound practice." *Hoffman v. FDIC,* 912

---

2. For example, the federal due process clause does not require a pre-seizure hearing when a state seizes a bank. *Fahey v. Mallonee,* 332 U.S. 245, 253–54, 67 S.Ct. 1552, 1556, 91 L.Ed. 2030 (1947). As the First Circuit explained:

> The drastic consequences of bank failure or mismanagement and "the impossibility of preserving credit during an investigation" call for prompt and decisive action and place this proceeding among the "extraordinary situations" in which notice and hearing may be postponed until after seizure.

*Roslindale Co-op. Bank v. Greenwald,* 638 F.2d 258, 260 (1st Cir.1981) (quoting *Fahey,* 332 U.S. at 253, 67 S.Ct. at 1556).

3. *See supra* note 1.

**1220** 

F.2d 1172, 1174 (9th Cir.1990).[4] Thus, Hoffman has already litigated the issue of whether ACB's business was being conducted in an unsound manner and received an adverse judgment. His underlying claim in the present case (that the State's seizure was unauthorized) is therefore barred by collateral estoppel.[5]

When the State seized ACB on July 7, 1988, it specifically noted that it had the power to seize a bank when, among other things, "the bank's business is being conducted in an unlawful or unsound manner." State of Alaska, Banking Order 89–1, at 10 (July 7, 1988). The State seized ACB partly for the following reasons:

> A transfer of ACB property is evident to the benefit of certain directors of the bank in apparent anticipation of closure of ACB on the finding of insolvency.
>
> . . . .
>
> [The] FDIC has initiated action ... in finding of unsafe and unsound banking practices.

*Id.* at 1, 3. The State further noted that one of ACB's improper property transfers was a "May 20, 1988 cashier's check ... in the amount of $61,796.48, payable to H. A. Hoffman, President, as a prepaid expense item for contract payment for the period June 1, 1988 through December 1, 1988." *Id.* at 4.

Thus, the State seized ACB because, among other reasons, ACB's purchase of Hoffman's employment contract amounted to an unsound practice. As mentioned above, AS 06.05.470(a)(2) authorizes the State to seize a bank for that reason. Since Hoffman has litigated this issue in federal court and lost, he is collaterally estopped from claiming that ACB's business was being conducted in a sound man-

ner. It follows that Hoffman is collaterally estopped from claiming that the State's seizure was unauthorized.

We need not decide whether Hoffman's claim is moot. As previously discussed, Hoffman's claim is barred by collateral estoppel. Thus, the hearing officer correctly dismissed Hoffman's administrative challenge to the State's authority to make the seizure regardless of whether it was moot.

AFFIRMED.

---

**4.** On the eve of ACB's closure, ACB purchased the balance of Hoffman's employment contract for approximately $61,000. *Hoffman v. FDIC,* 912 F.2d at 1173. The FDIC ordered Hoffman to repay the $61,000 because ACB's purchase of his employment contract constituted "an unsafe or unsound banking practice." *Id.* at 1174. The Ninth Circuit confirmed the FDIC's authority to take such action. *Id.* at 1176.

**5.** We have held that use of non-mutual collateral estoppel is appropriate "so long as there

were no 'unusual or exceptional factors in the prior adjudication which would warrant the application of the mutuality requirement.'" *Murray v. Feight,* 741 P.2d 1148, 1153 (Alaska 1987) (quoting *Pennington v. Snow,* 471 P.2d 370, 377 (Alaska 1970)). In the present case Hoffman did not argue, and the record does not indicate, that there were any factors in the federal litigation which would warrant the application of the mutuality requirement.