896 F.Supp. 1057 (1995)
UNITED STATES of America, Plaintiff,
v.
John A. HILL, Defendant.
Crim. No. 95-CR-78-B.
United States District Court, D. Colorado.
August 23, 1995.
*1058 Kenneth Fimberg, John Sbarbaro, Assistant U.S. Attorneys, Denver, CO, for plaintiff.
Shelly B. Don, Earl S. Wylderk, Don, Hiller & Galleher, P.C., Denver, CO, for defendant.

MEMORANDUM OPINION AND ORDER
BABCOCK, District Judge.
Defendant John A. Hill (Hill) is charged in counts 5 through 8 of the indictment with violations of the Endangered Species Act (the ESA), in counts 1 and 2 of the indictment with violations of the Lacey Act, and in counts 3 and 4 of the indictment with violations of the Migratory Bird Treaty Act (the MBTA). Hill moves to dismiss the ESA and Lacey Act counts on the grounds that the ESA unconstitutionally delegates to the Secretary of Interior (the Secretary) the power to declare legislative policy which affects fundamental rights in violation of Article I § 1 of the Constitution. He moves to dismiss all counts contending that the ESA, MBTA and the Lacey Act as applied here constitutes an unconstitutional taking under the Fifth Amendment. For the reasons set forth in this order, I deny the motion to dismiss.

I.
The ESA, 16 U.S.C. § 1531 et. seq., was enacted in 1973 to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved to provide a program for the conservation of such endangered species...." 16 U.S.C. § 1531(b). To further this purpose, Congress made it unlawful for any person to import, export, take, possess, offer for sale, sell, deliver, receive, carry, transport, or ship, by any means any endangered species of fish or wildlife. 16 U.S.C. § 1538(a)(1). The ESA defines an "endangered species" as "any species which is in danger of extinction...." 16 U.S.C. § 1532(6) (emphasis added). "Fish or wildlife" is defined as "any member of the animal kingdom, including without limitation any mammal [or] bird ... and includes any part, product, egg, or offspring thereof, or the dead body parts thereof." 16 U.S.C. § 1532(8). An individual may be permitted to engage in the acts proscribed by the ESA if he obtains a permit pursuant to § 1539. 16 U.S.C. § 1539.
The Lacey Act, 16 U.S.C. § 3371 et seq., makes it unlawful for any person to "import, export, transport, sell, receive, acquire, or purchase any fish or wildlife ... [which has been] taken, possessed, transported, or sold in violation of any law, treaty, or regulation of the United States...." 16 U.S.C. 3372(a)(1). As in the ESA, fish or wildlife *1059 includes any animal or product of such animal, whether dead or alive. 16 U.S.C. § 3371(a). The ESA, and any regulation promulgated thereunder, is a "law, treaty or regulation" of the United States, the violation of which, may give rise to prosecution under §§ 3372(a)(1) & (4), 3373(d)(1)(B) and 3373(d)(2).
The Migratory Bird Treaty Act, 16 U.S.C. § 701 et seq., was originally enacted in 1900. The intent of the MBTA is to protect migratory birds that have become scarce or extinct in the United States and to aid in their restoration. 16 U.S.C. § 701. Under the MBTA, it is unlawful to "possess, offer for sale, sell, offer to barter, barter, offer to purchase, purchase, ... any migratory bird, any part, nest, or egg of any such bird, or any product, whether or not manufactured, which consists, or is composed in whole or part, of any such bird ...." 16 U.S.C. § 703.
The charges in the indictment are the result of Hill's alleged sale, offer of sale and intent to sell wildlife with a market value of over $350.00 between December 1, 1994, and January 24, 1995. The alleged sale, offer of sale, and intent to sell concerns parts of Diceros bicornis (black rhinoceros), Panthera tigris (tiger), Aguila chrysaetos (golden eagle), Neofelis nebulosa, (clouded leopard), and Panthera uncia (snow leopard). At the time of the alleged sale, offer of sale and intent to sell, the Diceros bicornis, Panthera tigris, Neofelis nebulosa, and Panthera uncia were listed endangered species under the ESA, 50 C.F.R. § 17.11, and the Aguila chrysaetos was identified as a migratory bird. 50 C.F.R. § 10.13. Hill has owned these animal parts since the early 1980's when his uncle died leaving him 100% of the stock in a corporation which owned the artifacts.

II.
Hill moves to dismiss Counts 1 and 2 and 5 through 8 of the indictment arguing that the ESA is an unconstitutional delegation of legislative power to the Secretary. He contends that § 1533(a) & (b) of the ESA fails to set forth discernable objective criteria by which the Secretary is to exercise his delegated authority to determine which species are entitled to protection under the ESA. Hill further asserts that the term "in danger of extinction" fails to contain a meaning sufficiently precise so as to ascertain Congress' intent. Consequently, he argues, the ESA violates Article I, § 1 of the Constitution. I disagree.
Article I, § 1 of the Constitution provides "All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives." Although Congress may not delegate its law-making authority to another branch or administrative agency, "the Constitution has never been regarded as denying to the Congress the necessary resources of flexibility and practicality, which will enable it to perform its function in laying down policies and establishing standards, while leaving to selected instrumentalities the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the Legislature is to apply." Lichter v. U.S., 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948).
In Yakus v. U.S., 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944), the Supreme Court held that whether there has been a proper delegation of authority to an administrator depends on a "determination whether the definition sufficiently marks the field within which the Administrator is to act so that it may be known whether he has kept within it in compliance with the legislative will." However, "Congress is not confined to that method of executing its policy which involves the least possible delegation of discretion to administrative officers." Id. at 426, 64 S.Ct. at 668. "Only if [I] could say there is an absence of standards for the guidance of the Administrator's action, so that it would be impossible in a proper proceeding to ascertain whether the will of Congress has been obeyed, would [I] be justified in overriding its choice of means for effecting its declared purpose of [conserving endangered and threatened species]." Id. at 426, 64 S.Ct. at 668.
The plain purpose of the ESA is to conserve endangered and threatened species and the ecosystems on which they depend. 16 U.S.C. § 1531(b). The ESA defines an "endangered *1060 species" as "any species which is in danger of extinction throughout all or a significant portion of its range...." 16 U.S.C. § 1532(6). A "threatened species" is "any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. § 1532(20). Pursuant to the ESA's purpose, Congress vested the Secretary with authority to determine whether a species is endangered or threatened guided by the following standards:
(a) the present or threatened destruction, modification, or curtailment of its habitat or range;
(b) overutilization for commercial, recreational, scientific, or educational purposes;
(c) disease or predation;
(d) the inadequacy of existing regulatory mechanisms; or
(e) other natural or manmade factors affecting its continued existence.
16 U.S.C. § 1533(a)(1)(A)-(E). The determination must be made by regulation promulgated in accordance with the notice and hearing requirements of 16 U.S.C. § 1533(b). The determination must also be "solely on the basis of the best scientific and commercial data available to him after conducting a review of the status of the species and after taking into account those efforts, if any, being made by any State or foreign nation, or any political subdivision of a State of foreign nation, to protect such species, whether by predator control, protection of habitat and food supply, or other conservation practices, within any area under its jurisdiction, or on the high seas." 16 U.S.C. § 1533(b)(1)(A).
Hill argues that the criteria set forth in § 1533(a) & (b) describe "why" a species may be endangered or threatened but no discernable objective criteria for determining "what" is an endangered species. To the contrary, reading the provisions of the ESA in pari materia, Congressional expression of the why of it yields in sufficiently precise and intelligible fashion the what of it.
Hill further asserts that the criteria selected by Congress show an effort to avoid making important policy decisions that would have a substantial impact on the scope of the ESA. Hill argues that Congress should have provided a more technical definition to the terms "endangered species or threatened species." He contends that these terms must be considered relative to other factors which give them context.
The crux of Hill's argument is that Congress failed to limit intelligibly the Secretary's determination of which species are endangered or threatened with extinction because Congress failed to define criteria by which each of Earth's species may be considered in relation to all of Earth's species, including mankind. Moreover, he stressed at oral argument that no countervailing criteria are defined by Congress to ascertain a balance between furthering the protection of endangered or threatened species with social cost or benefit. Hill argues:
For example, Denver, Colorado is near Washington D.C., when compared to Tokyo, Japan; however, Denver, Colorado, is not near Washington, D.C., when compared to Baltimore, Maryland. In essence, Congress has asked the Secretary to pick a number between zero and infinity. If the "numbers" of that species are fewer than the number chosen by the Secretary, then any attempt to sell or offer for sale any part of that species constitutes a crime. Infinity as the basis for comparison renders "danger of extinction" meaningless. Thus, the "danger of extinction" idiom leaves the Secretary unrestricted authority to determine which species are entitled to protection.
This argument, it seems to me, borders on logomachy and is nugatory in light of Lichter and Yakus.
Hill cites Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935) in support of his arguments. Hill's reliance on this opinion is misplaced.
In Panama Refining Co. the Supreme Court addressed whether § 9(c) of the National Industry Recovery Act unconstitutionally granted "the President the authority to prohibit the transportation of petroleum or petroleum products in interstate and foreign commerce which was in excess of the amount *1061 permitted to be produced or withdrawn from storage by any State law or valid regulation...." Id. at 406, 55 S.Ct. at 242. The Supreme Court held that "Section 9(c) does not state whether or in what circumstances or under what conditions the President is to prohibit the transportation of the amount of petroleum or petroleum products produced in excess of the state's permission. It establishes no criterion to govern the President's course. It does not require any finding by the President as a condition of his action. The Congress in section 9(c) thus declares no policy as to the transportation of the excess production." Id. at 415, 55 S.Ct. at 246 (emphasis supplied). Here, in contrast, Congress clearly defined its policy in the ESA and, in light of that policy, the ESA defines endangered and threatened species, provides standards to be considered when making a determination regarding a species status, requires that the best scientific and commercial data is used in making such determination, and requires that a listing be made by regulation in conformance with § 1533(b).
"It is not necessary that Congress supply administrative officials with a specific formula for their guidance in a field where flexibility and the adaptation of the congressional policy to infinitely variable conditions constitute the essence of the program." Lichter v. U.S., 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948). Hill would stand this principle on its head by requiring Congress to do that which the Supreme Court declared is not required by the Constitution. If Congress is held to the degree of precision demanded by Hill there would be nothing of substance left to do by the Secretary for, indeed, Congress would have enumerated and identified the angels dancing on the head of our pin, Earth.
The ESA does not violate the Constitution simply because Congress delegates to the Secretary in broad terms authority to determine what is an endangered or a threatened species. Touby v. U.S., 500 U.S. 160, 165, 111 S.Ct. 1752, 1756, 114 L.Ed.2d 219 (1991). The Supreme Court recently held in Babbitt v. Sweet Home, ___ U.S. ___, ___, 115 S.Ct. 2407, 2418, 132 L.Ed.2d 597 (1995) that "When it enacted the ESA, Congress delegated broad administrative and interpretative power to the Secretary. See 16 U.S.C. §§ 1533, 1540(f). The task of defining and listing endangered and threatened species requires an expertise and attention to detail that exceeds the normal province of Congress." As long as Congress "lay[s] down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform, such legislative action is not a forbidden delegation of legislative power." Id. (quoting J.W. Hampton, Jr., & Co. v. United States, 276 U.S. 394, 409, 48 S.Ct. 348, 352, 72 L.Ed. 624 (1928) (emphasis added).
Touby v. United States, 500 U.S. 160, 111 S.Ct. 1752, 114 L.Ed.2d 219 (1991), is instructive. There, the district court denied the defendants' motion to dismiss an indictment based on his claim that § 201(h) of the Controlled Substances Act violated the nondelegation doctrine. Pursuant to § 201(h), the Attorney General could list a controlled substance on an temporary, expedited basis when he found that it was "necessary to avoid an imminent hazard to the public safety." 21 U.S.C. § 811(h). The Attorney General had listed "euphoria" as a Schedule I drug pursuant to this procedure. Id. at 162, 111 S.Ct. at 1754. The 201(h) procedure permitted the Attorney General to bypass the more laborious process found in the Act to permanently list a controlled substance. Schedule I substances carry with them the most severe penalties. The defendants claimed that because the listing of a substance affected fundamental rights, Congress must provide more specific guidance. Id. at 166, 111 S.Ct. at 1756. The Supreme Court held that § 201(h) did not violate the nondelegation doctrine because apart from determining that the drug posed an "imminent hazard to public safety" he must find that the drug has a high potential for abuse, has no currently accepted medical use in treatment in the United States, and lacks accepted safety for use of the drug. Id. at 167, 111 S.Ct. at 1757. Furthermore, he had to publish a 30-day notice of the proposed scheduling in the Federal Register and transmit notice to the Secretary of Health and Human Services.
Under the ESA the Secretary is authorized to determine those species which are *1062 presently "in danger of extinction." The phrase "in danger of extinction" is not nebulous. The word extinct is defined by Webster's Third New International Dictionary as no longer living. Danger is defined as the "the state of being exposed to harm." Therefore, under the ESA the Secretary must determine that a species is exposed to the harm of no longer existing. In making this determination he is guided by the standards set forth in § 1533(a)(1) in light of the best scientific and commercial data available. He must then consider efforts by any state or foreign nation to protect such species. The Secretary may only list a species pursuant to regulation promulgated in accordance with § 1533(b) of the ESA. That section requires that the Secretary publish a general notice and the complete text of the proposed regulation in the Federal Register at least 90 days before the effective date of the regulation. 16 U.S.C. § 1533(b)(5)(A). The Secretary must notify each state agency in each state where the species is believed to occur. 16 U.S.C. § 1533(b)(5)(B). He must also notify such professional and scientific organizations as he deems appropriate about the proposed regulation, 16 U.S.C. § 1533(b)(5)(C), and publish a summary of the proposed regulation in a newspaper of general circulation in each area of the United States where the species is found. 16 U.S.C. § 1533(b)(5)(D). Finally, the Secretary must hold a public hearing if a request for a hearing is filed within 45 days of the general notice. 16 U.S.C. § 1533(b)(5)(E). Thus, the Secretary's discretion is guided and limited by the standards in § 1533(a) as well as the procedural requirements of § 1533(b) which ensure public input and public scrutiny.
Hill argues that I should reject the "intelligible principle" test and adopt and apply a heightened scrutiny of the delegation here because listing a species as endangered affects fundamental rights. I decline this invitation. He relies solely on dicta in Fahey v. Mallonee, 332 U.S. 245, 250, 67 S.Ct. 1552, 1554, 91 L.Ed. 2030 (1947), and Justice Brennan's concurrence in United States v. Robel, 389 U.S. 258, 275, 88 S.Ct. 419, 429-30, 19 L.Ed.2d 508 (1967). The Supreme Court has never rejected the intelligible principle test in the criminal context. To the contrary, the Supreme Court has expressly applied it in criminal cases. See, Mistretta v. United States, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), Yakus v. United States, 321 U.S. 414, 426, 64 S.Ct. 660, 668, 88 L.Ed. 834 (1944), J.W. Hampton, Jr., & Co. v. United States, 276 U.S. 394, 409, 48 S.Ct. 348, 352, 72 L.Ed. 624 (1928).
I hold that there are sufficiently definite and precise standards to guide the Secretary's action in listing a species under the ESA sufficient to ascertain whether the will of Congress has been obeyed. I further hold that Congress set forth an intelligible principle to direct the Secretary's authority under the ESA. Even assuming heightened scrutiny, the delegation here transcends the intelligible principle test. Accordingly, I conclude that the ESA does not unconstitutionally delegate authority to the Secretary to determine what are endangered and threatened species.

III.
Hill also argues that the ESA, the MBTA, and the Lacey Act are unconstitutional because the enforcement of these Acts violates the Fifth Amendment Takings Clause. The Takings Clause provides that private property shall not be "taken for public use, without just compensation." U.S. Const. amend. V. Hill contends that the application of these acts deprived him of all economic value from his legally obtained property which constitutes a taking. Once again, I disagree.
In Andrus v. Allard, 444 U.S. 51, 100 S.Ct. 318, 62 L.Ed.2d 210 (1979), the Supreme Court held that the MBTA prohibition on the sale of migratory birds did not violate the Takings Clause. Simply because a regulation results in a reduction in the value of property is not equivalent to a taking. Id. at 66, 100 S.Ct. at 327. Addressing the distinction between personal and real property, the Supreme Court in Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), held that "in the case of personal property, by reason of the State's traditionally high degree of control over commercial dealings, he ought to be *1063 aware of the possibility that new regulation might even render his property economically worthless...."
Hill has not been denied all economic value from his property. There are other uses for the animal parts in question. As recognized in Allard, personal property may have value or generate income in ways other than by sale. Allard, 444 U.S. at 66, 100 S.Ct. at 327. Furthermore, the ESA permits one to sell endangered and threatened species if one obtains a permit under § 1539. Hill does not dispute that he never applied for a permit. Furthermore, at the time Hill came into ownership of the various animal parts they were already subject to the proscribed conduct under the Acts. Therefore, he had no arguably vested property right to sell the animal parts when he received them. Consequently, he has lost no right for which he can claim he is owed compensation. Accordingly, there is no violation of the Takings Clause.
Accordingly it is ORDERED that:
The motion to dismiss is DENIED.