AMERICAN COMMERCE NATIONAL BANK, et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 96–411C.

United States Court of Federal Claims.

July 3, 1997.

---

Robert M. Silverman, Los Angeles, CA, for plaintiffs.

Arnold M. Auerhan, United States Department of Justice, and Frank W. Hunger, Assistant Attorney General, Washington, DC, for defendant.

## OPINION AND ORDER

HODGES, Judge.

Plaintiffs bring this action against the United States seeking compensation in return for an unlawful taking. The case is before the court on defendant's Motion for Summary Judgment.

## I. FACTS

The Comptroller of the Currency appointed a receiver to seize possession and control of plaintiff American Commerce National Bank. On April 30, 1993, the Comptroller determined that the Bank engaged in unsafe and unsound banking practices. Plaintiff seeks compensation for the seizure as an "unlawful taking."

The Comptroller seized the Bank for (1) engaging in the continuing practice of concealing information from the OCC bank examiners; (2) abusive self-dealing; (3) inadequate lending procedures and administration; (4) questionable financial condition due to a high ratio of problem loans to capital and a high ratio of nonperforming assets; (5) involvement in insider-related interests as reflected by the unsound practices of substandard loans and waiver of overdraft fees to Associated Partners of Coast Plaza; and (6) providing excessive salaries and benefits to the officers of the bank. The Comptroller found that the Bank was in an unsafe and unsound condition to transact business and placed it in receivership.

Various shareholders, directors, and officers of the bank claim damages for the unlawful taking. Shortly after the receiver was appointed, the bank's holdings were sold to another institution. The officer/director plaintiffs sue for the loss of their salaries and careers.

The Bank argues not only that this is an unlawful taking for which it should be reimbursed, but also that it should have been accorded a hearing prior to seizure. Plaintiffs' main argument is that because it was solvent at the time the receivership was appointed, this is a compensable taking.

## II. UNLAWFUL TAKINGS

If, as plaintiff alleges, the seizure was unlawful, this court cannot grant relief. An unlawful taking does not entitle plaintiff to compensation under the Fifth Amendment. For plaintiff to prevail on a takings claim, the Government must be acting lawfully in the public interest. *See Florida Rock Industries, Inc. v. United States,* 791 F.2d

893, 898–99 (Fed.Cir.1986), *cert. denied,* 479 U.S. 1053, 107 S.Ct. 926, 93 L.Ed.2d 978 (1987). The remedy for an unlawful seizure of property is in tort. We do not have jurisdiction under the Tucker Act to hear claims based on tortious conduct. *See Clark v. United States,* 8 Cl.Ct. 649 (1985).

We will proceed on the assumption that the Comptroller's seizure of the Bank was a lawful government action because that appears to be the case. In either event we do not find that a compensable taking has occurred.

## III. TAKINGS

■ The Fifth Amendment mandates just compensation when the Government takes private property for public use. The type of regulatory taking we assume is alleged here is based on a government regulation that goes "too far," impinging upon the owner's property rights. *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922). Plaintiffs argue that the Comptroller went too far by appointing a receiver for a solvent financial institution.

The Supreme Court has articulated three factors to be considered in determining whether regulatory takings have gone "too far:" (1) the economic impact of the regulation; (2) the interference with the property owner's reasonable investment-backed expectations; and (3) the character of the government action and whether it benefits the public by burdening the property owner. *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). We do not address the economic impact because other considerations are dispositive of this case.

## IV. INVESTMENT-BACKED EXPECTATIONS

The banking industry is heavily regulated. *California Housing Securities, Inc. v. United States,* (banking is "one of the longest regulated and most closely supervised call-

ings.") 959 F.2d 955, (Fed.Cir.) *cert. denied,* 506 U.S. 916, 113 S.Ct. 324, 121 L.Ed.2d 244 (1992) (citing *Fahey v. Mallonee,* 332 U.S. 245, 250, 67 S.Ct. 1552, 1554, 91 L.Ed. 2030 (1947)). The plain language of both FIRREA and FDICIA[1] limit reasonable investment-backed expectations for banks that fail to adhere to the regulations prohibiting unsafe and unsound banking practices. Plaintiff bank voluntarily entered a highly regulated industry. When it engaged in the unsafe and unsound practices mentioned above, the bank surrendered any "reasonable" expectations to avoid interference from federal government, regardless of its financial status. Indeed, when the bank violated the federal banking regulations, the only reasonable expectation was that the Comptroller would take action.

Plaintiffs argue that passage of the FDICIA in 1991 gave rise to new grounds for appointing a conservator. However, the Comptroller possessed the power to seize a solvent bank under prior law. FIRREA permitted seizure of banks on the basis of unsafe and unsound business practices, regardless of solvency. Even if FDICIA did greatly expand upon the Comptroller's powers, the Federal Circuit has stated that substantive changes in the laws controlling heavily regulated industries that increase liability do not constitute takings claims. *Branch v. United States,* 69 F.3d 1571, 1578 (Fed.Cir.1995) *cert. denied,* —— U.S. ——, 117 S.Ct. 55, 136 L.Ed.2d 18 (1996) The Circuit noted that to treat changes in substantive laws as takings would "cripple the ability of federal and state legislatures to adjust to the benefits and burdens of economic life." *Id.*

■ Because the banking industry is so heavily regulated, government seizures of banks that do not adhere to federal regulations generally are not considered takings. *See American Continental Corp. v. United States,* 22 Cl.Ct. 692 (1991). Financial institutions are on notice that violations of banking laws and regulations will result in sei-

1. "FIRREA" is the acronym for the Financial Institutions Reform, Recovery and Enforcement Act of 1989. FIRREA, Pub.L. No. 101–73, Title VIII, § 802, 103 Stat. 183, 442 (1989) (amending 12 U.S.C. § 203) "FDICIA" is the acronym for the Federal Deposit Insurance Corporation Improvement Act of 1991. FDICIA, Title I, § 133, Pub.L. No. 102–242, 105 Stat. 2236, 2270–71 (1991).

zure. All property-right expectations are limited by compliance with federal regulations.

## V. FEDERAL REGULATIONS MANDATE SEIZURE FOR UNSAFE AND UNSOUND BUSINESS PRACTICES

 Plaintiffs argue that the enactment of FDICIA enabled the FDIC to seize solvent banks, whereas under FIRREA, federal regulators had no such power. Both laws permit seizure of solvent banks. Plaintiffs concede that FDICIA gives the Comptroller the power to seize solvent banks. Although industry practice under FIRREA may have been that regulators did not seize solvent banks, federal regulators clearly had statutory authority to appoint conservators for banks engaging in unsafe and unsound practices. FIRREA states that the Comptroller may appoint a conservator if one of several elements are met. The relevant portion of the statute reads:

> (a) Appointment.—The Comptroller of the Currency may, **without notice or prior hearing, appoint a conservator**, which may be the Federal Deposit Insurance Corporation, to take possession and control of a bank whenever the Comptroller determines that one or more of the following circumstances exist: . . . .

> (3) the bank is in an unsafe and unsound condition to transact business . . . ;

> (5) there is a violation or violations of laws, rules, **or regulations, or any unsafe or unsound practice or condition, which is likely to** *cause* **insolvency** or substantial dissipation of asserts or earning, or is likely to weaken the bank's condition or otherwise seriously prejudice the interests of its depositors; (emphasis added)

FIRREA, Pub.L. No. 101–73, Title VIII, § 802, 103 Stat. 183 442 (1989) (amending 12 U.S.C. § 203). Under FIRREA, Congress clearly contemplated government seizures prior to insolvency when financial institutions engaged in unsafe and unsound business practices. Indeed, the appropriate policy must be that financial institutions engaged in such dangerous practices be halted before insolvency occurs. Plaintiffs' assertion that FDICIA went "too far" is unfounded. Plain-

tiffs were on notice of the consequences of unsafe and unsound practices prior to passage of FDICIA.

## VI. CONCLUSION

Plaintiff's claims are not compensable, regardless of whether the claims are considered to be lawful or unlawful government action. Defendants motion to dismiss is GRANTED. The Clerk will dismiss the complaint. No costs.